[Civ. No. 41922. First Dist., Div. Three. Sept. 14, 1978.]

WORLDWIDE COMMERCE, INC., Plaintiff and Appellant, v.
FRUEHAUF CORPORATION, Defendant and Respondent.

**COUNSEL**

David H. Greenberg for Plaintiff and Appellant.

Kerner, Colangelo & Imlay and Alexander R. Imlay for Defendant and Respondent.

**OPINION**

**WHITE, P. J.**—Appellant Worldwide Commerce, Inc. (hereinafter Worldwide) appeals from a judgment of dismissal of the Superior Court of San Mateo County, entered following the sustaining of a demurrer of defendant and respondent Fruehauf Corporation (hereinafter Fruehauf) to the second and third causes of action of the amended complaint.[1]

The pleading which has given rise to this appeal, denominated "AMENDED COMPLAINT: INTERFERENCE WITH CONTRACTUAL RELATIONSHIP; INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP; CONSPIRACY" contains three causes of action. Although respondent Fruehauf's demurrer was directed only to the second and third causes of action, since each of those causes of action realleges and incorporates by reference the allegations of the first cause of action, a brief factual analysis of the first cause of action is here in order.

In substance, the first cause of action alleges that one of the plaintiffs, Trans-Continental Leasing Corporation (hereinafter Trans-Continental), engaged in truck leasing, a party to this action but not to this appeal. purchased certain truck trailers from respondent Fruehauf, which equipment it thereafter leased to defendant American Transport System, Inc. (hereinafter American Transport), a trucking company and another party to this action but not to this appeal.

It is alleged that the difference between the amount of the lease payments and the purchase price of the trailers covered the overhead costs and profit of Trans-Continental. It is then alleged that, following the execution of the equipment lease of the truck trailers between Trans-Continental as lessor and American Transport as lessee, respondent Fruehauf, Trans-Continental's vendor, unlawfully interfered with Trans-Continental's rights under the trailer lease in two respects, viz., its right to receive rents from its lessee by persuading the lessee to stop making rental payments and its right to repossess the equipment upon the lessee's default by threatening the lessor, Trans-Continental, when it tried to repossess its vehicles. It is further alleged that Fruehauf's acts of interference were continuous "and intending to destroy and interfere with said Plaintiff's [Trans-Continental's] business, . . ." The first cause of

---

[1]The "Statement of Facts" in appellant's opening brief does not contain an adequate summary of the facts as required by the California Rules of Court. We have therefore adopted the statement of facts included in respondent's brief. (Cal. Rules of Court, rules 13, 18.) We have added to respondent's factual summary where appropriate:

action finally alleges that, as a result of these alleged activities on the part of respondent Fruehauf, Worldwide sustained damages in excess of $300,000. Punitive and exemplary damages in the amount of $1 million are also alleged and prayed.

The second cause of action, which incorporates all of the provisions of the first cause of action, alleges that appellant Worldwide purchased all the shares of stock of plaintiff Trans-Continental in October of 1971 and thereafter has been the sole shareholder of Trans-Continental. It is alleged that because of its stock ownership of Trans-Continental, appellant Worldwide became qualified to incorporate and did incorporate its subsidiary's financial statements with its own. The second cause of action then proceeds to allege the creation of two relationships which are asserted to be the key to appellant's rights in this appeal; viz., the loan by appellant Worldwide to its subsidiary Trans-Continental of $250,000 and the guarantee by appellant Worldwide of all of Trans-Continental's obligations, including its obligation to pay respondent Fruehauf the unpaid balance of the purchase price of the trailers.

It is alleged that the loan and guarantee constituted part consideration for the stock purchase resulting in Worldwide wholly owning Trans-Continental while at the same time becoming its creditor and a guarantor for the leasing company's debts and obligations.

Appellant Worldwide claims that it was, at the time, unaware of respondent Fruehauf's prior conduct in interfering with the flow of rental payments from American Transport to Trans-Continental. It is alleged, however, that Fruehauf had knowledge of Worldwide's business relationship to Trans-Continental, viz., that of creditor-guarantor of its wholly owned subsidiary. Notwithstanding this knowledge, it is alleged that Fruehauf continued to intentionally interfere with Trans-Continental's leasing contract with American Transport. It then alleges that because of respondent Fruehauf's interference with these rental payments to Trans-Continental, and because of its interference with Trans-Continental's right to repossess the vehicles following the equipment lessee's default, damages resulted not only to Trans-Continental but also to appellant Worldwide of a sum in excess of $500,000. As a special item of damages claimed to have been suffered by appellant Worldwide, the value of its own shares is said to have diminished, also to the extent of more than $500,000, the reason assigned for this loss being the circumstance that the "earnings and losses" of Trans-Continental were "incorporated" in the profit and loss statements of appellant Worldwide, the loss to Trans-

Continental "thereby" causing lost profits to appellant Worldwide and the "resulting diminution" to Worldwide's own stock.

The third cause of action alleges a conspiracy on the part of various defendants, including respondent Fruehauf to damage the business of one of the plaintiffs (presumably referring to plaintiff Trans-Continental, but the language of paragraph 28 of the amended complaint is unclear in this respect) by doing the same acts of interference which are set forth in the first cause of action.

It is also alleged that when defendant American Transport discontinued making its lease payments to plaintiff Trans-Continental, this resulted in damage to both plaintiff Trans-Continental and to appellant Worldwide.

■■ "At the outset, it is well settled that a general demurrer admits the truth of all material factual allegations in the complaint (*Flores* v. *Arroyo,* 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]); that the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court (*Katenkamp* v. *Union Realty Co.,* 6 Cal.2d 765, 769 [59 P.2d 473]; *Division of Labor Law Enforcement* v. *Barnes,* 205 Cal.App.2d 337, 346 [23 Cal.Rptr. 55]); and that plaintiff need only plead facts showing that he may be entitled to some relief (*Vanoni* v. *Western Airlines,* 247 Cal.App.2d 793, 795 [56 Cal.Rptr. 115])." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

■ Simply stated, we perceive appellant Worldwide's contention as follows: (1) that Worldwide is a creditor of Trans-Continental ($250,000 loan) and a guarantor of Trans-Continental's debt to respondent Fruehauf (purchase of 31 trailers); (2) that this commercial or business relationship (creditor-guarantor) at the time of its inception (when Trans-Continental became the wholly owned subsidiary of Worldwide) was economically advantageous; (3) that intending to destroy and interfere with Trans-Continental's leasing business, respondent Fruehauf unjustifiably manipulated American Transport to breach its lease or contract with Trans-Continental (first count); and (4) that concomitantly respondent's acts complained of rendered a prospectively economically sound business relationship disadvantageous (the second count).

Appellant cites no case precedent for its novel stance, rather Worldwide simply states, "There is no indication by statute, case law or

otherwise that a party in WORLDWIDE's position cannot avail itself of this tort remedy. On the contrary, the tort is designed to impose liability for intentional interference with business relations or advantages which may be prospective." (Citing 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 386, pp. 2638-2639.)

However, in our view appellant has, at the very least, the burden of persuasion. We are not persuaded that appellant's creditor-guarantor relationship with Trans-Continental constitutes a legally protected interest by the business tort interference with prospective advantage, leastwise not in the factual context herein alleged.

■ The interest protected in the tort of interference with prospective business advantage (hereinafter the tort) is the interest in reasonable expectations of economic advantage. The fundamental principle of the tort is that intentional interference with another's efforts to enter into profitable contractual relations is actionable unless it falls within the area of socially acceptable conduct which the law regards as privileged. The wrong ordinarily requires conduct intended to interrupt negotiations or prevent the consummation of a contract. (See 1 Harper & James, The Law of Torts (1956) § 6.11, pp. 510-514.)

The tort is characterized in the Restatement of Torts section 766 (Inducing Breach of Contract or Refusal to Deal): "Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."

In the Restatement, the types of "expectancies" are limited to two basic situations under clause (b). One is the situation where the tortfeasor induces or otherwise purposely causes a third party not to enter into a business relation with the plaintiff, as, for example, not to buy from or sell to plaintiff, or not to employ or be employed by him or not to lend or borrow from him, or not to make some other contemplated contract with him. In the second situation the plaintiff and a third party are already in a business relationship which is terminable at the will of the third party and the tortfeasor induces or otherwise purposely causes the third party to terminate the relationship, as, for example, to terminate an employment or tenancy at will, or to call a demand note. Clause (a) really requires no explanation, suffice to observe that Trans-Continental's first cause of action as alleged is a classic example.

Seeking further a historical perspective of the tort we quote our Supreme Court Justice Mosk, writing in *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 822-823 [122 Cal.Rptr. 745, 537 P.2d 865]: "This tort, although infrequently invoked, is not new to the law. Interference with contractual relations was recognized as an actionable wrong over a century ago in the celebrated English case of *Lumley* v. *Gye* (Q. B. 1853) 118 Eng.Rep. 749. With respect to the related tort of interference with prospective advantage, Prosser teaches that 'The real source of the modern law . . . may be said to be the case of *Temperton* v. *Russell* [1893], in which the Court of Queen's Bench declared that the principles of liability for interference with contract extended beyond existing contractual relations, and that a similar action would lie for interference with relations which are merely prospective or potential.' (Fn. omitted.) (Prosser, Torts (4th ed. 1971) p. 949.)

"The great weight of authority is that the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage. (1 Harper & James, Torts (1956) pp. 510-514; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 386, pp. 2638-2639; Prosser, Torts (4th ed. 1971) p. 929; Note, *Developments in the Law—Competitive Torts* (1964) 77 Harv.L.Rev. 888, 961-962; Bernhardt, Cal. Real Estate Transactions Supp. (Cont.Ed.Bar 1974) § 5.81.) Thus while the elements of the two actions are similar, the existence of a legally binding agreement is not a *sine qua non* to the maintenance of a suit based on the more inclusive wrong." (Fns. omitted.)

Modern day authority Witkin writes that the tort consists of diverting or taking business from another employing intentional and improper methods which are not within the privilege of fair competition. He observes, "The test is admittedly vague, and the applications are difficult to classify, but the law is developing at a rapid rate." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 392, p. 2643.)

Reading appellant Worldwide's complaint, second cause of action thereof, broadly as we are obligated to do in considering a general demurrer, we conclude that it fails to state a cause of action in the tort interference with existing or prospective advantage. Worldwide disclaims, as legally it must, any right to complaint, based on its status as the sole shareholder of Trans-Continental. The claimed "right to sue is based

upon its direct relationship to Defendant FRUEHAUF [respondent] as guarantor of a debt to FRUEHAUF."[2]

It matters not; in our view, appellant misperceives the tort. We read the second cause of action to allege by permissible inference only two contracts to which appellant is a party. One is Trans-Continental's agreement to pay back the $250,000 loaned by Worldwide; the second, of course, is Worldwide's agreement with Trans-Continental to guarantee its debt to respondent. Worldwide does not allege that respondent induced a breach of either of these contracts; neither is it alleged that Fruehauf interfered with the performance or disrupted the contractual relationship between Worldwide and its wholly owned subsidiary Trans-Continental. Simply stated, no facts are alleged from which it can be concluded that respondent intentionally and improperly diverted or deprived appellant Worldwide of its business, which we repeat, is the interest the tort has traditionally protected.

We reject Worldwide's contention that its "bona fide business relationship" as a creditor-guarantor, in the context herein alleged, constitutes a prospective economically advantageous expectancy as contemplated by the tort. Significantly, appellant's complaint does not allege or demonstrate how it could be that by loaning $250,000 or guaranteeing payment of Trans-Continental's debt to Fruehauf, Worldwide could reasonably expect to realize a profit. The legitimate purpose of any business relationship or business is to render a service or supply goods at a profit. When a lender lends, he foresees that he may not be repaid, that is why most lenders require security for the loan. When one guarantees the debt of another, it is foreseeable that he might be required to pay in the future.

The complaint does not allege that appellant expected a reasonable interest profit on the loan. Appellant neither alleges nor demonstrated by way of argument how it could be that acting as a guarantor is in the course of business a profit making venture. It is not alleged that Worldwide acted as a guarantor for a fee or premium, loss of which is complained. On the contrary, the complaint alleges that the loan and guarantee were consideration for the stock purchase. Worldwide's com-

---

[2]Appellant briefs its right to sue as follows: "WORLDWIDE COMMERCE, INC.'s position in this suit is not through TRANS-CONTINENTAL LEASING CORP. as a shareholder, but rather it is as a creditor of the TRANS-CONTINENTAL debt to Defendant-Respondent, FRUEHAUF CORPORATION on an obligation secured by the American Transport System/Trans-Continental contract.

"Furthermore, WORLDWIDE's right to sue is based upon its direct relationship to Defendant FRUEHAUF as guarantor of a debt to FRUEHAUF."

plaint is that the value of its stock diminished because Trans-Continental suffered a loss of profits. In 1 Harper & James, The Law of Torts, *supra,* section 6.11, page 512, the authors point out: "With few exceptions, the 'expectancies' of economic advantage which the law protects are found in the business or industrial field where their loss is susceptible, at least, of rough measurement and the causal relationship between the defendant's acts and the alleged loss is traceable with a fair degree of certainty in the light of business experience generally."

Prosser, Law of Torts (4th ed. 1971) section 130, at page 950, teaching in the same vein, writes: "For the most part the 'expectancies' thus protected have been those of future contractual relations, such as the prospect of obtaining employment or employees, or the opportunity of obtaining customers. In such cases there is a background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered."

We have not been made aware of any business experience background or current practice wherein we could, without engaging in impermissible and fanciful speculation, conclude that appellant's creditor-guarantor relationship was one reasonably expected to be economically advantageous.[3]

We agree with Prosser's observation that a large part of what is most valuable in modern life depends upon "probable expectancies." As social and industrial life becomes more complex, this court must do more to discover, define and protect them from undue interference. However, appellant has at least the burden of persuading the court and must select the proper legal vehicle to effectuate progress. Appellant has done neither.

In view of our decision that respondent Fruehauf's conduct as alleged is not tortious as to appellant, there is likewise no cause of action for conspiracy against appellant.

---

[3]All authorities, including case law on the subject of the business tort interference with existing or prospective business advantage, agree that a defendant's acts may be independently tortious if the means adopted are unlawful in themselves as in the case of fraud, violence, intimidation, defamation, groundless civil suits or criminal prosecutions in bad faith. However, no such allegations appear in appellant's complaint.

We affirm the judgment dismissing the second and third causes of action of the complaint.

Feinberg, J., and Halvonik, J., concurred.