Mary SPRINGER, Appellant,

v.

WEEKS AND LEO COMPANY,
INC., Appellee.

87–816.

Supreme Court of Iowa.

Sept. 21, 1988.
Rehearing Denied Oct. 13, 1988.

Thomas M. Werner, Des Moines, for appellant.

Lori A. Liljedahl and Gary S. Gill, Des Moines, for appellee.

CARTER, Justice.

Mary Springer, the plaintiff in a wrongful discharge action, appeals from an adverse judgment following a directed verdict for her former employer, Weeks & Leo Company (defendant). Plaintiff alleged that her discharge was due to her efforts in pursuing a workers' compensation claim against her employer. She contends that discharging an employee for this reason so offends against public policy that the employer's conduct should be recognized as an

actionable, tortious interference with the contract of employment.

■ We agree that discharging an employee merely for pursuing the statutory right to compensation for work-related injuries offends against a clearly articulated public policy of this state. This type of conduct by an employer, if established, will support a claim for tortious interference with the contractual relationship. On the record before us, we conclude that plaintiff's evidence was sufficient to present a jury issue as to whether her discharge was due to the filing of a workers' compensation claim against defendant. We reverse the judgment of the district court and remand the action to that court for a retrial of the issues.

Plaintiff was employed by defendant in June 1983. Defendant is engaged in the manufacture and sale of cosmetics and over-the-counter pharmaceutical products. Plaintiff initially worked on an assembly line filling bottles and was later transferred into the labeling department. Her work also included some light dusting and cleaning duties.

The labeling activity in which plaintiff was engaged required the constant use of her hands and fingers. The record indicates that in January 1984, plaintiff began to develop severe pains and spasms in her hands and fingers. Her doctor diagnosed this condition as bilateral carpal tunnel syndrome. Surgery was performed to correct this condition on April 24, 1984.

During a recuperation period of approximately ten weeks, plaintiff filed a workers' compensation claim alleging that her carpal tunnel syndrome condition was caused by the physical activities required in her employment with defendant. Defendant's workers' compensation insurance carrier investigated the claim, made a preliminary determination that there had been a work-related injury and began paying benefits to plaintiff prior to the time she was released by her physician to return to work. On July 2, 1984, plaintiff was released by her physician to return to her employment.

Plaintiff testified at the trial of this action that, when she returned to work on that date, she was informed by defendant's manager that she could not resume working unless she signed a document stating that her carpal tunnel syndrome problems were not work-related. Plaintiff testified that she refused to do this and was then advised by the manager to obtain a written statement from her physician authorizing her return to work and certifying that her employment would not cause a recurrence of her condition. Plaintiff did obtain a written statement from her physician releasing her to return to work without reservation. The physician declined, however, to state that her work-related activity would not cause a recurrence of the carpal tunnel syndrome condition.

On July 5, 1984, plaintiff was discharged from her employment. Ultimately, on March 13, 1985, plaintiff's workers' compensation claim was resolved by a stipulation in which the employer and insurance carrier agreed that her hand disablement had arisen out of and in the course of her employment with defendant. Plaintiff commenced this action against defendant on July 11, 1985.

■ Following the presentation of plaintiff's evidence, the district court directed a verdict in favor of defendant primarily on the ground that plaintiff was an at-will employee and could be discharged for any reason at all. The court also expressed the view that plaintiff's evidence was insufficient to create a jury issue on whether her discharge was due to her filing a workers' compensation claim. Other facts which are significant in deciding this appeal will be discussed in connection with our consideration of the legal issues presented.

I. *Tortious Termination of Employment At Will.*

The defendant asserts that the judgment should be affirmed because plaintiff was an employee at will. Plaintiff does not dispute this characterization of the employment relationship but argues that this court recognized in *Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 455 (Iowa 1978), that, even under employment-

at-will relationships, a remedy for damages may exist when the employment is terminated for reasons contrary to public policy. We stated in *Abrisz* that this doctrine "has recently gained considerable favor with courts." *Id.*

Examples of courts granting judicial remedies for the discharge of at-will employees for reasons deemed to be contrary to public policy include the following: *Petermann v. International Bhd. of Teamsters,* 174 Cal.App.2d 184, 188–89, 344 P.2d 25, 27 (1959) (discharge for refusal of employee to commit perjury at employer's behest); *Parnar v. Americana Hotels,* 65 Haw. 370, 379–80, 652 P.2d 625, 631 (1982) (discharge of employee for cooperation with grand jury investigating employer's anticompetitive business practices); *Palmateer v. International Harvestor Co.,* 85 Ill.2d 124, 130, 52 Ill.Dec. 13, 16–17, 421 N.E.2d 876, 879–80 (1981) (discharge of employee for supplying law enforcement authorities with information concerning criminal acts of co-employee); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 133, 316 A.2d 549, 551 (1974) (discharge of employee for refusal to submit to supervisor's sexual advances); *Nees v. Hocks,* 272 Or. 210, 218–19, 536 P.2d 512, 514–15 (1975) (discharge of employee for serving on a jury); and *Wandry v. Bull's Eye Credit Union,* 129 Wis.2d 37, 48–49, 384 N.W.2d 325, 330 (1986) (discharge of employee for refusing to reimburse employer for loss on forged check which had been cashed with approval of employee's supervisor).

By far the largest category of cases where a judicial remedy has been recognized for discharging an employee at will for reasons which contravene public policy are cases such as the present one where the cause for discharge is alleged to be the filing of a workers' compensation claim by the employee. These cases include *Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 148, 85 Ill.Dec. 475, 478–79, 473 N.E.2d 1280, 1283–84 (1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985); *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 251–53, 297 N.E.2d 425, 428 (1973); *Murphy v. City of Topeka,* 6 Kan. App.2d 488, 495–96, 630 P.2d 186, 192

(1981); *Sventko v. Kroger Co.,* 69 Mich. App. 644, 647, 245 N.W.2d 151, 153 (1976); *Hansen v. Harrah's,* 100 Nev. 60, 64, 675 P.2d 394, 396–97 (1984); *Krein v. Marian Manor Nursing Home,* 415 N.W.2d 793, 794–95 (N.D.1987); *Clanton v. Cain-Sloan Co.,* 677 S.W.2d 441, 445 (Tenn. 1984); and *Shanholtz v. Monongahela Power Co.,* 270 S.E.2d 178, 182–83 (W.Va. 1980).

Notwithstanding our recognition in *Abrisz* that several courts had granted remedies to employees at will who were discharged for reasons that contravene public policy, we were not required to apply this doctrine in deciding that case. This was because we determined that the trier of fact in the *Abrisz* case had properly determined that the discharge was for reasons other than those alleged by the employee and which did not contravene public policy.

In the present case, we conclude that plaintiff's evidence was sufficient to generate a jury issue as to whether her discharge was due to the filing of a workers' compensation claim. Consequently, because the district court directed a verdict based on her employee-at-will status, we must now consider and determine whether a discharge for this reason so contravenes public policy as to constitute a tortious interference with the employee's contract of hire. We conclude that it does.

■ We believe a cause of action should exist for tortious interference with the contract of hire when the discharge serves to frustrate a well-recognized and defined public policy of the state. It is provided in Iowa Code section 85.18 (1987) that:

> No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided.

We deem this to be a clear expression that it is the public policy of this state that an employee's right to seek the compensation which is granted by law for work-related injuries should not be interfered with regardless of the terms of the contract of

hire. To permit the type of retaliatory discharge which has been alleged in this case to go without a remedy would fly in the face of this policy.

The Illinois court in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E. 2d 353 (1978), stated the issue this way:

> [T]he legislature enacted the workmen's compensation law as a comprehensive scheme to provide for efficient and expeditious remedies for injured employees. This scheme would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act. We cannot ignore the fact that when faced with such a dilemma many employees, whose common law rights have been supplanted by the Act, would choose to retain their jobs, and thus, in effect, would be left without a remedy [under] either common law or statut[e]. This result, which effectively relieves the employer of the responsibility expressly placed upon him by the legislature, is untenable and is contrary to the public policy as expressed in the Workmen's Compensation Act.

*Id.* at 181–82, 23 Ill.Dec. at 563, 384 N.E.2d at 357. In reaching a similar conclusion, the North Dakota court in *Krein*, observed that:

> The "sure and certain relief" for an injured workman in our Workmen's Compensation Act would be largely illusory and do little for the workman's "well-being" if the price were loss of his immediate livelihood. We agree with those courts which hold that discharge of an employee for seeking workmen's compensation profanes public policy and permits a tort action against the employer.

*Krein*, 415 N.W.2d at 794.

In arguing against recognition of a tort remedy for employee discharges deemed contrary to public policy, defendant suggests that this is a matter which should be left to the legislature. We disagree. The issue is, we believe, a generic one more nearly related to the common-law tort which has been recognized for improper interference with existing business relationships than with any single substantive topic with which the legislature might deal. It is not, for example, a workers' compensation issue. It is an employment law issue which may arise in a variety of circumstances, one of which happens to involve workers' compensation claims. Moreover, by sanctioning wrongful discharge actions for contravention of a public policy which has been articulated in a statutory scheme, we are acting to advance a legislatively declared goal. *See Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 576, 335 N.W. 2d 834, 842 (1983).

When we recognized the tort of interference with a business relationship in *Clark v. Figge*, 181 N.W.2d 211 (Iowa 1970), we advanced the view that this would protect against "interference with reasonable economic expectancies." *Id.* at 213. This concern is perhaps more clearly expressed in *Worldwide Commerce, Inc. v. Fruehauf Corp.*, 84 Cal.App.3d 803, 811, 149 Cal. Rptr. 42, 47 (1978), where the court observes:

> We agree with [the] observation that a large part of what is most valuable in modern life depends upon "probable expectancies." As social and industrial life becomes more complex, this court must do more to discover, define and protect them from undue interference.

We conclude that the plaintiff in the present case is seeking protection against a clearly improper interference with an interest which is both ascertainable and worthy of protection.[1]

---

1. In granting plaintiff a remedy for this type of interference, we are not unmindful that in cases decided under §§ 766 and 766A of the Restatement (Second) of Torts (1979) the claims have ordinarily involved an improper interference with an existing contract or future expectancy between the plaintiff and a third person. *See Klooster v. North Iowa State Bank*, 404 N.W.2d 564, 570 (Iowa 1987); *Payne v. Rozendaal*, 147 Vt. 488, 496, 520 A.2d 586, 590 (1986). Ordinarily, if the defendant is a party to the contract, other adequate remedies are available. We do not find this to be true in the employment-at-will relationship, however, and agree with those courts which, in that situation, permit recovery for tortious interference with a contract to which the defendant is a party.

## II. Sufficiency of Evidence to Present Jury Issue as to Reason for Discharge.

We next discuss an alternative argument advanced by defendant in an effort to save the judgment of the district court. This argument is tied to the trial court's observation, in ruling on the motion for directed verdict, that it doubted there was sufficient evidence to sustain plaintiff's claim that her discharge was due to the workers' compensation claim.

Although the trier of fact may ultimately agree with the district court's observation, we are convinced that on the record presented this issue was for the jury. Plaintiff's testimony concerning the temporal proximity of the discharge to the demand of defendant's manager that she release her pending workers' compensation claim is sufficient, we believe, to raise a jury question as to whether she was discharged for pursuing the claim.

Although defendant now suggests that there were other reasons for plaintiff's discharge, it was never required to produce any evidence on this issue as a result of the directed verdict at the close of plaintiff's evidence. It now asks us to find another reason from a document in evidence which defendant filed with the Iowa Department of Job Service. This document indicates that defendant was concerned about plaintiff's job requirements aggravating her carpal tunnel syndrome condition. The trier of fact would not have been required to accept this explanation as a verity even if a representative of the defendant had so testified at trial. See, e.g., Gordon v. Pfab, 246 N.W.2d 283, 287 (Iowa 1976). Because of the directed verdict, however, there was no such testimony by defendant on this point.

The proceedings before the Iowa Department of Job Service may be viewed in an entirely different light than that presented by defendant. The context in which defendant was stating a reason for plaintiff's discharge before that agency involved an effort to disqualify plaintiff from unemployment benefits on the grounds of misconduct. Defendant initially implied before the agency that plaintiff had filed a groundless and false workers' compensation claim and that this was the reason for her discharge. That circumstance can be viewed as reinforcing plaintiff's contention that the filing of the workers' compensation claim was the reason her employment was terminated.

■ Defendant argues that its conduct must be measured by the information available to it at the time of plaintiff's discharge. It suggests that the information which caused it and its insurance carrier to stipulate that plaintiff's injury was in fact work related was not available to it when the discharge occurred. We find this argument to be untenable for two reasons. First, it appears that defendant's workers' compensation insurance carrier believed that there was enough evidence that plaintiff's injury was work-related to have begun the payment of weekly benefits prior to the time that she was discharged. Second, we believe that, if it is contrary to public policy to discharge an employee for filing a workers' compensation claim, it is also against public policy to discharge an employee solely on the employer's subjective judgment as to the bona fides of a pending claim prior to its resolution by the industrial commissioner. Indeed, there may be situations where a workers' compensation claim is ultimately unsuccessful and yet a discharge based on the filing of the claim would violate public policy.

For the reasons we have stated, the district court erred in directing a verdict for the defendant. As the record stood at the close of plaintiff's evidence, a jury question was presented on plaintiff's tortious interference claim.

## III. Evidentiary Issues Which May Arise on Retrial.

■ Because this action must be retried, we briefly consider certain evidentiary disputes which are likely to recur. Plaintiff sought to offer as evidence at the first trial two letters of her physician which were identified and authenticated in the physician's deposition testimony. These letters were written more than four months after plaintiff's discharge and supported her

claim that her carpal tunnel syndrome problems were work-related.

■ Defendant moved to exclude these letters on the ground that they were written after plaintiff had been discharged and therefore contained information not available to it when it terminated plaintiff's employment. The trial court granted defendant's motion to exclude the correspondence on that ground. On the record which existed at the time this ruling was made we are unable to say it was erroneous. Relevancy and materiality are ordinarily matters of trial court discretion. *Carter v. MacMillan Oil Co.*, 355 N.W.2d 52, 55 (Iowa 1984).

Plaintiff's theory of admissibility for these letters is that they complete the story of the diagnosis made of her physical condition. She contends defendant is relying on an earlier tentative diagnosis from the same physician indicating that her condition was not work-related. She suggests that such reliance by defendant is for the purpose of claiming plaintiff was terminated for misrepresenting the cause of her physical condition in the workers' compensation claim. It is provided in Iowa Rule of Evidence 106(a) that:

> When an act, declaration, conversation, writing, or recorded statement, or part thereof, is introduced by a party, any other part or any other act, declaration, conversation, writing, or recorded statement is admissible when necessary in the interest of fairness, a clear understanding, or an adequate explanation.

Notwithstanding the provisions of that rule, we believe plaintiff's theory of admissibility is anticipatory. Often the determination of relevance must await the development of the parties' respective positions at trial. *See State v. Campbell*, 326 N.W.2d 350, 354 (Iowa 1982).

It is as yet impossible to state precisely what reason defendant will give to the jury for having terminated plaintiff's employment. Perhaps the subject matter of these letters written on November 13, 1984, and November 27, 1984, will become relevant and material to the issues. We cannot say at this time, however, that such will be the case, nor that the district court erred in excluding these exhibits.

■ Also swept up in the trial court's ruling on defendant's motion to exclude evidence was another letter which was written by defendant's attorney to plaintiff's attorney six days after plaintiff's termination. Plaintiff's trial counsel read certain portions of this letter into the record out of the presence of the jury. This included the statement that:

> [I]f Mary now believes her injury was not caused by her job, the company would be willing to review the situation. Of course, she would have to return the money she's received from the insurance company.

Defendant's attorney objected to this letter because "it comes after the date of the dismissal of the plaintiff, therefore, it's irrelevant and immaterial to any issues in this case." The district court in ruling on the motion to exclude the letters from plaintiff's physician also declared that the letter from defendant's attorney would be excluded.

Without expressing any opinion as to other objections that might be available in regard to the latter correspondence, we conclude that it is not irrelevant or immaterial to the issues because it was written after plaintiff was discharged. Correspondence written after the happening of an event may be illuminating as to motives which prompted that event.

We have considered all issues presented and, for reasons which were stated earlier in this opinion, conclude that the judgment of the district court must be reversed. The case is remanded to the district court for a retrial of the issues.

REVERSED AND REMANDED.

All justices concur except HARRIS, J., and McGIVERIN, C.J., and SCHULTZ, J., who dissent.

HARRIS, Justice (dissenting).

Not every private or social wrong is appropriate as a basis for a tort remedy. I dissent because I think an employee at will should not be allowed damages for losing a job which had no tenure.

I. The facts alleged against this employer are deeply offensive. I enthusiastically join the majority in condemning any employer who would fire an employee merely for pursuing a workers' compensation claim. But persons employed under contracts at will may lose their jobs at the whim of the employer. The majority does not dispute this but holds that a tort arises when the employee is fired, not for a frivolous reason, but for a socially or legally objectionable reason. When, as here, the objectionable reason is especially offensive, it tends to blur the fact that the employee had, after all, no legal right to continued employment. Because, however, there was no such right there should be no tort recovery merely because the employer acted from a bad motive rather than a whim.

II. There is another reason why we should not fashion this tort remedy. It will be nearly impossible for us to do what the legislature easily could do: set the reasonable metes and bounds for fixing damages. Cases from other states show there is no consistent way to measure them because the employee had no fixed employment rights for any fixed period. *See* Annotation 32 A.L.R.4th 1221.

I would affirm.

McGIVERIN, C.J., and SCHULTZ, J., join this dissent.