David L. BELOW and Mary
Kay Below, Appellants,

v.

Jay A. SKARR and Carol Skarr d/b/a
J & C Grocery, Defendants,

and

Interstate Brands Corp. f/k/a Continental
Baking Company, Appellee.

No. 96–1543.

Supreme Court of Iowa.

Oct. 22, 1997.

Randall E. Nielsen of Pappajohn, Shriver, Eide & Nicholas, P.C., Mason City, for appellants.

Vicky L. Seeck, Roger A. Lathrop, and Peter J. Thill of Betty, Neuman & McMahon, L.L.P., Davenport, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

LARSON, Justice.

David Below, an employee of a baking company, was injured while making a delivery to a grocery store. He sued both the store, on a theory of premises liability, and his employer on the theory that the employer interfered with Below's rights to pursue a claim for workers' compensation. The district court dismissed the suit against the employer, and we affirm.

While working as a deliveryman for Continental Baking Company (now known as Interstate Baking Company) [hereinafter Continental], David Below was injured when he slipped and fell on an icy walkway at the store. Below initially sued only the store, but in an amended petition, he added his claim against Continental. He claimed that Continental threatened to terminate his employment "with the intent, or knowing that the effect would be, to prevent or discourage Plaintiff David L. Below from exercising his rights under the Workers' Compensation Laws of the State of Iowa, a tortious act in violation of the public policy of the State of Iowa." Below applied for and received workers' compensation. He now claims damages from his employer at common law for medical expenses, loss of function of mind and body, pain and suffering, and loss of wages. His wife claimed a loss of consortium. Continental's motion to dismiss these claims was granted on the ground that Iowa does not recognize a claim for threatened termination for an employee's exercise of his workers' compensation rights.

## I. *Scope of Review.*

On an appeal from a dismissal for failure to state a claim under Iowa Rule of Civil Procedure 104(b), our review is closely circumscribed. We assess the petition in the light most favorable to the plaintiffs and resolve all doubts and ambiguities in their favor. To sustain such a motion, the movant must show that no state of facts is conceivable under which the plaintiffs might show a right of recovery. *Holsapple v. McGrath,* 521 N.W.2d 711, 712 (Iowa 1994); *Unertl v. Bezanson,* 414 N.W.2d 321, 324 (Iowa 1987).

## II. *Analysis.*

Below is an employee at will, and we have frequently discussed the employee-at-will doctrine, its exceptions, and the policy behind the exceptions:

> Employment relationships in Iowa are presumed to be at-will. *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 281 (Iowa 1995). In the absence of a valid employment contract, an employer may discharge an employee at any time, for any reason, or no reason at all. *Huegerich v. IBP, Inc.,* 547 N.W.2d 216, 219 (Iowa 1996); *Anderson,* 540 N.W.2d at 281. We have recognized only two narrow exceptions to this general rule: (1) where the discharge clearly violates a "well-recognized and defined public policy of the state"; and (2) where a unilateral contract is created by an employer's handbook or policy manual. *Huegerich,* 547 N.W.2d at 220 (quoting *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560 (Iowa 1988)).
>
> The public policy exception is based on the theory that employers should not be allowed to fire employees for reasons that violate public policy. *Borschel v. City of Perry,* 512 N.W.2d 565, 567 (Iowa 1994). Such policies may be expressed in the constitution and the statutes of Iowa. *Id.* An employer may be subject to tort liability for the retaliatory discharge of an employee when the discharge violates a "well-recognized and defined public policy" of Iowa. *Lara v. Thomas,* 512 N.W.2d 777, 782 (Iowa 1994).

*Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 202–03 (Iowa 1997).

We have held that one of the "well-recognized and defined public policies" in employment relationships is violated when an employer discharges an employee for exercising his rights under the workers' compensation statute. *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 559–60 (Iowa 1988); *Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 685 (Iowa 1990) (holding that employer may be liable for wrongful termination even if employer does not interfere with actual receipt of workers' compensation benefits). *See generally* Theresa Ludwig Kruk, Annotation, *Recovery for Discharge From Employment in Retaliation for Filing Workers' Compensation Claim,* 32 A.L.R.4th 1221 (1984).

The policy on which Below relies stems from Iowa Code section 85.18 (1995), which provides:

> No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by [the workers' compensation] chapter except as herein provided.

In *Springer* we held this statute "to be a clear expression that it is the public policy of this state that an employee's right to seek the compensation which is granted by law for work-related injuries should not be interfered with regardless of the terms of the contract of hire." *Springer,* 429 N.W.2d at 560–61; *accord Smith,* 464 N.W.2d at 685. Both *Springer* and *Smith* involved actual discharge of the employee. However, Below argues that their underlying policy should provide a basis for a claim for *threatened* as well as *actual* termination. He cites only one case in support of this argument: *Johnson v. Safeway Stores, Inc.,* 67 Wash.App. 10, 833 P.2d 388, 389 (1992). That case, however, does not support his argument. In fact, the court in *Johnson* pointed out the practical problems in recognizing such claims.

In *Johnson* an employee alleged that he failed to file a timely workers' compensation claim because of implied threats of termination. The Washington court recognized a claim for threatened discharge, but only under limited circumstances. One requirement is that the employee is so intimidated that he

*does not file a workers' compensation claim. Id.*, 833 P.2d at 389. That is not the situation with Below; he has successfully filed his claim for workers' compensation and has received his benefits.

*Johnson* denied recovery to the plaintiff because he failed to establish the "necessary direct threat of retaliation, even if we view all reasonable inferences in favor of [the plaintiff]." *Id.* at 390. The court, moreover, noted the practical problems in recognizing such a claim:

> There is some danger that the cause of action which we recognize [but did not apply] in this case may be asserted any time an employee misses the deadline for a filing of a workers' compensation claim.... Therefore, when an employee claims that his or her failure to file the claim is a direct result of threats and intimidation by the employer, some specificity should be required. If the evidence set forth above which amounts to nothing more than a general impression that his employer might be unhappy if a claim were filed, were deemed to be sufficient to establish a prima facie cause of action, then the cause of action might become a vehicle for wholesale avoidance of the time limit for filing such claim.

*Id.*

If we were to recognize the claim advanced by Below in this case, we would go beyond the dictum of *Johnson.* Below does not even claim, as Johnson did, that he lost his workers' compensation benefits because of the threatened termination. Moreover, we would encourage a rash of common-law claims by any potential workers' compensation recipients who claim to have been threatened with termination or subjected to any other form of harassment in the workplace by simply asserting that it was retaliatory in nature.

In first recognizing a claim for tortious interference with employment in *Springer,* we relied in part on *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978), which noted the "untenable" result of making an employee choose between continued employment and the receipt of workers' compensation benefits. According to *Kelsay,* this is a result that "effectively relieves the employer of the responsibility [to pay workers' compensation or respond in a common-law suit] expressly placed upon him by the legislature." *Kelsay,* 23 Ill.Dec. at 563, 384 N.E.2d at 357; *accord Springer,* 429 N.W.2d at 561.

Below has not been deprived of continued employment; as far as we know, he is still employed. Nor has he been deprived of workers' compensation benefits; he has applied for and received workers' compensation for his injuries. Thus, the dilemma noted in *Springer* and its cited cases (having to choose between workers' compensation and continued employment) does not exist.

For the reasons discussed, particularly the specter of a proliferation of common-law suits in an area largely preempted, through statutes, by workers' compensation procedures, we hold that claimed harassment of a worker, including threatened termination, does not give rise to a claim at common law. Below has not claimed that the conduct of his employer was so egregious as to amount to a constructive termination, and we express no view as to the validity of a policy-based suit under such circumstances.

We conclude that the district court properly dismissed the suit.

**AFFIRMED.**