**Ric GRAVES, Appellee,**

v.

**Gloria O'HARA, d/b/a Gloria O'Hara Trucking, and Donald O'Hara, Appellants.**

**No. 96–1115.**

Court of Appeals of Iowa.

Jan. 28, 1998.

Brian T. Fairfield and William B. Norton of Norton & Norton, P.C., Lowden, for appellants.

Thomas J. Currie of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellees.

Heard by CADY, P.J., and HUITINK and STREIT, JJ.

HUITINK, Judge.

Gloria and Donald O'Hara d/b/a O'Hara Trucking appeal an adverse jury verdict and resulting judgment in a wrongful discharge claim brought by their former employee, Ric Graves. We reverse.

## I. Background Facts and Proceedings.

Ric Graves worked as a truck driver for O'Hara Trucking from January to December 1993. O'Hara fired Graves for missing work on December 28, 1993. Graves sued O'Hara for wrongful discharge alleging he was fired for pursuing a workers' compensation claim. O'Hara denied this allegation citing Graves' excessive absenteeism, insubordination, and declining job performance as the reasons for his termination.

At trial the parties presented their respective versions of Graves' work history at O'Hara and events leading up to his termination. On March 22, 1993, Graves sustained a work-related injury for which he received uncontested workers' compensation benefits. Upon returning to work, the terms and conditions of Graves' employment remained the same. Although Graves was released to work without restrictions in July 1993, Graves continued to consult with his doctor for pain and stiffness in his injured arm. In September 1993, Graves' doctor noted Graves was "near maximum medical improvement" and indicated he should be re-evaluated near the anniversary date of his injury in March 1994. The record also indicates Graves contacted his doctor regarding his injury in November 1993, December 1993, and January 1994. O'Hara did not object to Graves' July and September medical appointments and continued to pay the resulting expenses following his termination.

In October 1993, Graves was assigned a different and more strenuous route. This change was the source of conflict between the parties and Graves complained of increased discomfort resulting from its physical demands.

Gloria O'Hara testified Graves missed work on September 6, 14, 30, November 11, 26, and December 24, 1993. She also testified Graves refused to do the new route on December 7, 20, and 23, 1993. O'Hara warned Graves about his absenteeism and consulted Job Service about the implications of terminating him for his absences. On December 23, Gloria O'Hara and Graves argued over his absenteeism and job performance. On the following Monday, December 27, Graves told Gloria O'Hara he would miss work the next day because he had a doctor's appointment. Donald O'Hara telephoned Graves that day and told him he would be fired if he did not work on December 28. Graves' testimonial version of the conversation was as follows:

A. Okay. He called up and he says, "We got fucking shit to haul"; and he says, "Goddamn you," he says "you ain't going to no doctor until March 22nd." He says, "Either you're going to the fucking doctor or you're going to bring the fucking shit in." I says, "I don't know what to do." So we quit talking there. The wife, she didn't hear the conversation, but she was off about from here to where Tom is (indicating), and she could hear the screaming going on on the other line, and 15 minutes later he calls up and he says, "Just what are you going to do?" I said, "I made up my mind, Don, I'm going to the doctor because it ain't worth it for me to get any worse. I want to get better." He says, "Bring your fucking shit in tonight."

Donald O'Hara disputed Graves' version of this conversation. He testified Graves was told he could no longer make medical appointments on company time and fired him when Graves refused to comply.

O'Hara's motions for directed verdict at the close of Graves' evidence and at the close of the evidence were denied. The jury found in favor of Graves on his wrongful termination claim and awarded $18,623 damages for lost wages. O'Hara's motion for a judgment notwithstanding the verdict was denied.

On appeal O'Hara's contend their motions for directed verdict and judgment notwithstanding the verdict should have been granted and the jury's verdict lacks sufficient evidentiary support. O'Hara also argues the court erroneously instructed the jury on the proof necessary to sustain a wrongful discharge claim.

## II. Standard of Review.

This case was tried as an action at law. Accordingly, our review is limited to errors of law. Iowa R.App. P. 4.

## III. Motions for Directed Verdict and Judgment Notwithstanding the Verdict.

A directed verdict is appropriate in cases where each element of the claim is not supported by substantial evidence. *Oberreuter v. Orion Indus., Inc.*, 398 N.W.2d 206, 209 (Iowa App.1986). A court ruling on a motion for directed verdict must view the evidence in the light most favorable to the nonmoving party. *Beitz v. Horak*, 271 N.W.2d 755, 757 (Iowa 1978); Iowa R.App. P. 14(f)(2). Movant is considered to have admitted the truth of all evidence offered by nonmovant and every favorable inference that may be deducted from it. *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976). To overrule the motion, the court must find substantial evidence in support of each element of nonmovant's claim. *Beitz*, 271 N.W.2d at 757. If reasonable minds could differ, the issue is for the jury. *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443, 444 (Iowa App.1984). The trial court is vested with considerable discretion in determining whether evidence is sufficient. *Hoover's Hatchery, Inc. v. Utgaard*, 447 N.W.2d 684, 687 (Iowa App.1989). A motion for judgment not withstanding the verdict must stand or fall on the grounds urged in the movant's earlier motion for a directed verdict. *Meeker v. City of Clinton*, 259 N.W.2d 822, 827 (Iowa 1977).

In Iowa, employees are presumed to be "at will." *Anderson v. Douglas &*

*Lomason Co.*, 540 N.W.2d 277, 281 (Iowa 1995). An employer may discharge an at will employee at any time, for any reason or no reason at all. *Id.* The exceptions to this rule recognized by Iowa courts include (1) discharge in violation of a "well recognized and defined public policy of the state," and (2) where a unilateral contract is created by an employee's handbook or policy manual. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988).

Recovery under the theory of violation of public policy requires proof Graves engaged in conduct protected by a recognized public policy. Graves must prove his protected conduct was a determining factor in O'Hara's decision to fire him. *See Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990). A determining factor is one that tips the scales decisively in either direction. *Id.* at 686. Proof adverse employment action occurs after protected employee conduct, without more, is insufficient to generate a fact question on the determining factor issue. *Dudley Phipps v. IASD Health Servs. Corp. d/b/a Blue Cross Blue Shield of Iowa*, 558 N.W.2d 198, 203 (Iowa 1997) (citing *Hulme v. Barrett*, 480 N.W.2d 40, 43 (Iowa 1992)). The court must decide as a matter of law whether a particular employee act is protected by public policy. We have recognized an employee's cause of action if the discharge is "in retaliation for performing an important and socially desirable act, exercising a statutory right or refusing to commit an unlawful act." *Borschel v. City of Perry*, 512 N.W.2d 565, 567 (Iowa 1994) (citations omitted).

In Iowa, discharge based on retaliation for seeking workers' compensation benefits is against public policy. *Springer v. Weeks & Leo Co.*, 429 N.W.2d at 560. In *Springer*, the court stated, "[w]e deem this [Iowa Code section 85.18][1] to be a clear expression that it is the public policy of this state that an employee's right to seek the compensation which is granted by law for work-related injuries should not be inter-

---

1. Iowa Code section 85.18 states

No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in

part, from any liability created by this chapter except as herein provided.

fered with regardless of the terms of the contract of hire." *Id.*

A theory of recovery premised on termination for pursuing a workers' compensation claim has been distinguished from a wrongful termination claim based on absenteeism occasioned by a work-related injury. *Yockey v. State*, 540 N.W.2d 418, 421 (Iowa 1995). These distinct theories of recovery "though perhaps derived from the same public policy considerations, are dissimilar and stem from dissimilar factual claims." *Id.* at 422. While a wrongful termination claim based on the former is well established, our supreme court has not yet resolved the viability of the latter. *Id.* In noting this distinction, the *Yockey* court recounted New York's experience with this issue and quoted the following language based on termination claims resulting from employee absences:

> An employer should be permitted to take reasonable steps to secure a steady, reliable, and adequate work force.... The absence of a public employee from his position for a prolonged period unduly impairs the efficiency of an office or agency. In many cases, the duties of the absent employee must be absorbed by the remaining staff because temporary replacements are difficult to obtain. Continued performance of the business of government necessitates that there be a point at which the disabled officer may be replaced. These concerns are not diminished by the circumstance that the employee was injured on the job, rather than off. To forbid absolutely any detrimental treatment of an injured worker would transform [the workers' compensation law] into a job security clause, which is contrary to the Legislature's intent....

*Id.* (quoting *Duncan v. New York State Developmental Center*, 63 N.Y.2d 128, 135, 481 N.Y.S.2d 22, 25, 470 N.E.2d 820, 823 (1984)).

Graves claimed he was fired for pursuing a workers' compensation claim. This was the theory of recovery advanced at trial and ultimately submitted to the jury by the district court. We do not believe, based on the distinctions made in *Yockey*, that the undisputed facts generated a jury issue on Graves' stated theory of recovery. Graves'

entitlement to benefits was uncontested and, until December 27, 1993, O'Hara accommodated Graves' absences necessitated by medical appointments on company time. Although the recollections of the terms of Don O'Hara's December 27 ultimatum differed, under either version, Graves was fired because his history of absences, even if necessitated by his injury, were disruptive to O'Hara's business operations. Extending the range of permissible inferences from these facts to include Graves' termination for pursuing a workers' compensation claim requires us to disregard the distinctions made in *Yockey*. Because the undisputed determining factor in O'Hara's decision to fire Graves was absenteeism, the public policy supporting Graves' theory of recovery was not implicated. Whether this evidence supported submission on a theory Graves did not advance at trial is a question we are unable to answer. *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 286 (Iowa 1979).

The judgment of the district court is reversed.

**REVERSED.**