Brian **POAGE**, Plaintiff,

v.

**CENEX/LAND O' LAKES AGRONOMY COMPANY** Defendant.

No. 3:02–CV–90013.

United States District Court, S.D. Iowa, Davenport Division.

April 8, 2003.

Nicholas G. Pothitakis, Esq., Burlington, IA, for Plaintiff.

William C. Davidson, Esq., Davenport, Eric W. Smith, Esq., and Kevin Mason, Esq., Kansas City, MO, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court is a motion from Defendant Cenex/Land O' Lakes Agronomy Company, now Argiliance LLC (Argiliance), seeking summary judgment on Plaintiff, Brian Poage's claim for retaliatory discharge. The Court has received and reviewed both parties' filings in support and resistance of the motion, and the matter is fully submitted. As detailed below, Defendant's motion is denied.

## I. BACKGROUND

Brian Poage began working for Argiliance in September 1999 as location manager of Defendant's Denmark, Iowa plant. On Thursday, April 13, 2000, Poage injured his back while climbing out of one of Defendant's farm vehicles. Plaintiff filled out an accident report the same day, and reported the injury to his supervisor, Jim Gerst. Under Defendant's ordinary procedure, the injured employee and/or the employee's supervisor are responsible for reporting the work injury to the workers compensation insurance carrier. Plaintiff's supervisor was also responsible for completing the necessary payroll paperwork to put Poage on a leave of absence for the work related injury. In this case, however, Randy Nelson, a facility supervisor, told Poage and Gerst that he would handle the necessary paperwork for both the insurance carrier and payroll. Argiliance's payroll department did not receive the leave of absence paperwork until June 2, 2000. The workers compensation claim was never filed with the insurance carrier.

Pursuant to his doctor's orders, Plaintiff was off work because of the injury from April 17, 2000 until June 12, 2000. While on injury leave, Plaintiff received his regular bi-weekly paycheck for the weeks ending April 22, 2000 through June 2, 2000. He did not receive workers compensation benefits. On June 12, Plaintiff was released to return to work half days with a light duty restriction. Plaintiff did return to work on June 12, 2000, and worked the entire week, four hours per day. On June 16, Plaintiff's next scheduled pay day, Poage received no paycheck. Upon inquiry, Plaintiff was told that he would not be receiving a paycheck for the week ending June 9, 2000 while he was completely off work per his doctor's orders, nor would he receive a paycheck for the previous week during which he had worked half days. Plaintiff was further informed that he would receive neither workers compensation benefits for his time off from work, nor payment for the hours worked during the week ending June 16, 2000.

Poage contacted Jim Gerst on June 20, 2000 regarding the fact that he had not been paid for the past two weeks of work. Gerst suggested that the only way for Plaintiff to receive a paycheck would be for him to return to work full time, and that workers compensation would not provide benefits for part time or half time work. Gerst's comments were affirmed by Larry Roiger, the region manager for Defendant's retail operations. Roiger explained that Poage would not receive any more checks until the company could determine how much Poage had been overpaid, due to the fact that Plaintiff had been receiving his regular salary instead of workers compensation benefits. As well, Roiger reiterated Gerst's earlier statement that the fastest way for Plaintiff to receive a paycheck would be for him to obtain a full work release and return to work full time.

Based on his conversations with the two Agriliance supervisors, Plaintiff contacted his doctor on June 20, 2000 and demanded a full work release. Later that day, Plaintiff's physician's office faxed a new work restriction slip to Defendant indicating that Poage could return to work full time. Although Plaintiff was never provided with a paycheck for the weeks ending June 9th and June 16th, he was released to work full time and was promised a check for the two week period ending June 30th. During the next few weeks, Plaintiff missed time from work because of his physical condition. On June 29, 2000, Plaintiff's physician renewed his full work restriction, but Plaintiff never submitted the slip to his supervisor out of concern that he would receive neither a paycheck nor workers compensation benefits.

Between June 20 and July 14, 2000, Plaintiff missed work or left work early on several occasions due to his injury. In the process, Plaintiff exhausted his vacation days and available personal time off. Gerst spoke with Plaintiff on several occasions, but Plaintiff was physically unable to work full time. In mid July, Gerst and Richard Parkhurst, an individual who would be assuming Gerst's responsibilities at the end of July, met with Plaintiff to discuss his job performance. During the course of the meeting, Poage was terminated. Plaintiff's last day of work with Agriliance was July 14, 2000.

## II. SUMMARY JUDGMENT STANDARD

Rule 1 of the Federal Rules of Civil Procedure mandates that all Rules, including Rule 56, "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Accordingly, summary judgment is not a paper trial. "The district court's role in deciding the motion is not to sift through

the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment this Court has but one task, to decide, based on the evidence of record as identified in the parties' moving and resistance papers, whether there is any material dispute of fact that requires a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 10 *Wright, Miller & Kane* § 2712, at 574–78. The parties then share the burden of identifying the evidence that will facilitate this assessment. *Waldridge*, 24 F.3d at 921.

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994); *United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir.1990); *Woodsmith Publ'g v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and positions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.P. 56(c),(e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material....Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. DISCUSSION

■ Under Iowa law, absent a valid employment contract, employment is presumed to be at will. *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 280 (Iowa 2000). Accordingly, either party may terminate the employment relationship at any time and for any reason, without incurring liability. *Id.* at 280–281. In the past thirty years, Iowa courts have adopted two exceptions to the at will employment doctrine. One exception, "discharges in violation of employee handbooks which constitute a unilateral contract," *see Id.* at 281 (citing *French v. Foods, Inc.*, 495 N.W.2d 768, 769–71 (Iowa 1993)), is not applicable in this case. Plaintiff's complaint, however, is an embodiment of the other exception, "discharges in violation of public policy." *See Fitzgerald*, 613 N.W.2d at 281 (citing *Springer v. Weeks & Leo Co., Inc.*, 429 N.W.2d 558, 560 (Iowa 1988)). If, as Plaintiff alleges, Agriliance terminated his employment because he sought to recover workers compensation benefits, Defendant's actions were clearly in violation of

the "well-recognized and defined public policy of [Iowa]." *See Barrera v. Con Agra, Inc.,* 244 F.3d 663, 665 (8th Cir. 2001) (citing *Springer,* 429 N.W.2d at 559).

■ To recover for the tort of wrongful discharge in violation of public policy, a Plaintiff must establish three elements: "(1) engagement in a protected activity; (2) discharge; and (3) a causal connection between the conduct and the discharge." *Fitzgerald,* 613 N.W.2d at 281, (citing *Teachout v. Forest City Community Sch. Dist.,* 584 N.W.2d 296, 299 (Iowa 1998)). Iowa courts have not specifically addressed the question of whether a burden-shifting analysis applies if Plaintiff overcomes his burden of establishing the *prima facie* case, but Iowa case law indicates that such an analysis applies. *See Knutson v. AG Processing, Inc.,* 2002 WL 31422858 (N.D.Iowa 2002) (reviewing Iowa case law and concluding that burden-shifting analysis applies to common law wrongful discharge case). Under the burden-shifting analysis, Plaintiff bears the initial burden of establishing the *prima facie* case. *See Brown v. Farmland Foods, Inc.,* 178 F.Supp.2d 961, 980 (N.D.Iowa 2001). Having done so, a presumption of retaliation arises, and the burden shifts to Defendant to set forth a legitimate non-retaliatory reason for its action. *Id.* If Defendant accomplishes this task, the burden shifts again to Plaintiff to show that Defendant's proffered reason is merely a pretext for an otherwise illegal action.

■ As this is Defendant's motion for summary judgment, the Court conducts the requisite analysis while considering the record in a light most favorable to Plaintiff. In this light, Plaintiff has certainly established a *prima facie* case of wrongful discharge. The first two elements, that Plaintiff participated in a protected activity and that he was discharged, are uncontested. Defendant argues, however, that the necessary causal connection is lacking from Plaintiff's claim. The Court disagrees. Here, Plaintiff's workers compensation claim was never filed with the insurance carrier, and Agriliance failed to follow its usual procedures to ensure that Poage was not denied an income during the time he was unable to work because of his employment related injury. Immediately after this failure was discovered, Plaintiff stopped receiving any compensation whatsoever. When Mr. Poage brought this to the attention of his superiors, he was told that the only way that he would receive a paycheck would be to go back to work full time. Although he attempted to return to work in spite of contrary instructions from his doctor, Agriliance refused to provide Plaintiff any leeway or support. Shortly thereafter, Agriliance terminated his employment. A reasonable jury could certainly find a connection between Plaintiff's workers compensation claim and his discharge. Additionally, a jury could reasonably find that Agriliance's proffered justification, absenteeism, is merely a pretext for an unlawful discharge in violation of Iowa public policy. Thus, Defendant's motion for summary judgment must be overruled.

## IV. ORDER

Defendant's motion for summary judgment is **denied**.

IT IS SO ORDERED.