Scott Lynn SMUCK, Appellant,

v.

NATIONAL MANAGEMENT CORP., An Iowa Corporation; and, Robert Burns & Associates, Appellees.

No. 5–349.

Court of Appeals of Iowa.

Sept. 22, 1995.

---

1. Appellant's Brief p. 3; Appellant's Reply Brief p. 1.

John P. Whitesell and Bruce Smith of the Whitesell Law Office, Iowa Falls, for appellant.

Helen C. Adams and Rebecca Boyd Parrott of Dickinson, Mackaman, Tyler & Hagen, A.P.C., Des Moines, for appellee.

Heard by SACKETT, P.J., and HABHAB and HUITINK, JJ.

HUITINK, Judge.

Scott Lynn Smuck appeals the district court's grant of summary judgment in favor of defendant. We affirm in part and reverse in part.

Scott Smuck is the former manager of a low-income apartment complex owned by National Management Corp (NMC). The low-income apartments were subsidized by the Farmers Home Administration (FmHA) based upon the difference between the market value of the apartments and the tenants' ability to pay. The tenants' ability to pay was determined by income, the number of occupants, and the consideration of other expenses, such as child care. NMC received no money from the FmHA if a tenant was not shown to have resided in a particular apartment for a required period of time.

NMC terminated Smuck's employment, allegedly because of complaints received by tenants and his inability to communicate with the tenants concerning their problems. Smuck claims the evidence shows he discovered a scheme to defraud the FmHA. He asserts he discovered NMC was misrepresenting the number of days tenants resided in a particular apartment and allowing tenants to misrepresent expenses in order to receive a larger subsidization. He claims that as a result of his refusal to participate in this activity NMC terminated his employment. NMC asserts Smuck's discovery of fraud is limited to his belief a resident was over representing child-care expenses.

Smuck brought this wrongful termination suit against NMC. He alleged his employment was terminated in violation of public policy. He also claimed NMC breached a written contract of employment. Both Smuck and NMC filed motions for summary judgment. The court denied Smuck's motion but granted NMC's motion in its entirety. It held the documents presented by Smuck, including an employee termination report and termination check list, were not sufficiently definite to create a contract of employment. The court also held that because Smuck's discharge claim was grounded in federal rather than state law it did not contravene a clearly expressed public policy of the State of Iowa. Smuck appeals.

■ On a motion for summary judgment our review is for correction of errors at law. Iowa R.App.P. 4. Summary judgment is appropriate only if there exists no genuine issue of material fact. *Farm Bureau Mut.*

*Ins. Co. v. Milne,* 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact. *Id.* The evidence must be viewed in the light most favorable to the nonmoving party. *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986). This procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the nonmoving party. *Id.* A fact issue is generated if reasonable minds can differ on how the issue should be resolved. *Id.* If the conflict in the record consists only of legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Milne,* 424 N.W.2d at 423.

In asserting his claim Smuck relies on two legal theories, breach of contract and wrongful termination. We consider each issue separately.

## I. Breach of Contract.

Smuck first asserts that the termination of his employment constitutes a breach of his employment contract with NMC. He bases his claim on the warning procedures specified in his written policy manual and his written employment contract. He contends that these documents clearly specify that he was entitled to written warnings prior to his termination and that he relied on NMC's guarantees of such warning before termination.

■ Iowa recognizes that as a general rule the relationship between employers and employees is one that is at-will. *French v. Foods, Inc.,* 495 N.W.2d 768, 769 (Iowa 1993). Iowa courts have, however, allowed exception to this rule where a contract created by an employer's written handbook or manual guarantees an employee that discharge will occur only for cause. *Id.* at 770. For this exception to apply, the handbook or manual must be sufficiently definite in its terms to constitute an offer, must be communicated to and accepted by the employee, and the employee must have continued working so as to provide consideration. *Id.*

■ We agree with the district court that the documents at issue do not guarantee an employee any number of warnings before

termination of his or her employment. Although these documents suggest that warnings may be given in some cases, they do not state such warnings will be given in all instances. Thus, they do not clearly alter the presumed at-will relationship between NMC and its employees. Moreover, NMC's policy manual contains an explicit statement that NMC is an at-will employer. When viewed in their entirety these documents are not sufficiently definite to create a unilateral contract of employment under which an employee may be discharged only for cause. We affirm the district court on the breach of contract issue.

## II. Wrongful Termination.

Smuck also contends that his refusal to violate federal law was the sole reason for his discharge and that, as a result, NMC terminated his employment in violation of public policy. He asserts that NMC was falsifying tenant records in an effort to defraud the federal government in violation of 18 U.S.C. § 1001 and that his objection to this activity was the basis for his termination.

We first note that this is not a whistle-blower claim. Iowa's whistle-blower statute, Iowa Code section 70A.29, applies only to public employees who report violations of law to law enforcement officials. NMC is a private employer, and Smuck never reported NMC's alleged illegal activities. He only refused to participate in what he asserts was a scheme to defraud the federal government. His claim, then, is not within the reach of Iowa's whistle-blower statute.

Smuck, instead, asserts that the termination of his employment violates public policy because it was allegedly grounded in his refusal to break federal law. NMC argues in response, and the district court so held, that Iowa only recognizes a cause of action for such tortious wrongful discharge when the employer's alleged wrong doing is grounded in a *state* statute. In short, NMC asserts that because Smuck has not identified a public policy violation grounded in Iowa law he has failed to state a claim for which relief can be granted.

Iowa courts recognize an exception to the employment at-will doctrine where discharge violates well-recognized and defined public policy. *Fogel v. Trustees of Iowa College,* 446 N.W.2d 451, 455 (Iowa 1989). At issue here is precisely where courts may look to find the source of such public policy. It is clear that public policy violations occur where there is a violation grounded in an Iowa statute. *Wilcox v. Hy-Vee Food Stores, Inc.,* 458 N.W.2d 870, 872 (Iowa App.1990). Here, however, the alleged violation of public policy is based on federal law. As a result, we must decide whether federal law can provide the policy basis for a wrongful discharge claim in Iowa.

Although Iowa has not yet identified federal law standing alone as a source of public policy in wrongful termination cases, several other states have adopted federal law as state policy. *See Phipps v. Clark Oil Ref. Corp.,* 408 N.W.2d 569, 571 (Minn.1987) (allowing wrongful discharge claim on policy grounds where employee refused to violate federal Clean Air Act); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.Ct.App.1985) (federal Food and Drug Administration regulations can provide basis for state public policy); *D'Agostino v. Johnson & Johnson, Inc.,* 133 N.J. 516, 628 A.2d 305, 312 (1993) (not allowing summary judgment in favor of defendant employer where employee alleged his employment was terminated because of his refusal to violate federal statute); *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985) (federal water pollution laws as basis for wrongful termination claim); *Peterson v. Browning,* 832 P.2d 1280, 1283 (Utah 1992) (federal law may provide basis for public policy wrongful termination claim). We agree with these courts that federal law can serve as an appropriate source for state public policy. Accordingly, we find that 18 U.S.C. § 1001 can serve as a proper basis for Smuck's public policy claim.

We base our holding on our belief that state and federal law need not be mutually exclusive. The mere fact that a violation of a federal law is the basis for a wrongful termination claim does not as a matter of law preclude a finding that state public policy was violated. Here, Smuck asserts that his

employers asked him to defraud the federal government. He asserts that when he refused to do so his employment was terminated. Although Smuck cannot point to any state statutory violation on the part of NMC, he has created an issue of material fact as to whether or not he was terminated based on his refusal to violate federal law. We believe it is contrary to public policy to fire an employee for refusing to break any law, be it state or federal. Thus, we hold that federal law and policy can serve as a clear mandate of Iowa public policy. Any other finding would leave many employees with the difficult decision of either breaking federal law or losing their jobs. Such a finding would also allow employers to discharge employees who refuse to violate federal law, while protecting those employees who refuse to violate state law. Such inconsistency would not only violate public policy but also defies common sense.

This decision is a logical extension of Iowa's existing employment case law. The supreme court has recognized that terminating an employee for "refusing to commit an unlawful act" is a violation of public policy. *Borschel v. City of Perry*, 512 N.W.2d 565, 567 (Iowa 1994). Furthermore, this court has held that there is an implied cause of action for wrongful termination when the reason for discharge is the employee's failure to violate state law in the course of employment. *Wilcox*, 458 N.W.2d at 872. Iowa courts have also found an implied prohibition against retaliatory discharge based on an employee's exercise of a right conferred by the state legislature. *See Lara v. Thomas*, 512 N.W.2d 777, 780 (Iowa 1994) (public policy violated where employee was fired for filing an unemployment claim); *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988) (cause of action exists where employee was discharged for filing a workers' compensation claim).

We hold that a violation of federal law may serve as a basis for a well-recognized public policy exception for purposes of wrongful termination claims. It was error for the district court to conclude otherwise. We, therefore, reverse the judgment of the district court granting NMC's motion for summary judgment on Smuck's wrongful termination claim.

In summary, we affirm the district court's grant of summary judgment on Smuck's breach of contract claim. We reverse and remand for trial on the wrongful termination claim.

**AFFIRMED IN PART AND REVERSED IN PART.**