Katherine BORN and Rick Gillispie, Plaintiffs,

v.

BLOCKBUSTER VIDEOS, INC., a Texas Corporation, Defendant.

Civil No. 3–96–CV–10057.

United States District Court,
S.D. Iowa,
Davenport Division.

July 15, 1996.

John M. Loeschen, Loeschen & Loeschen, Burlington, IA and Kent Lewis, Burlington, IA, for plaintiffs.

Thomas D. Waterman, Lane & Waterman, Davenport, IA and James S. Whitehead, Sidley & Austin, Chicago, IL, for defendant.

ORDER

LONGSTAFF, District Judge.

The Court has before it defendant's motion to dismiss, filed April 15, 1996. Plaintiffs resisted the motion May 29, 1996, and defendant filed a reply brief June 6, 1996.[1] The motion is now fully submitted.

---

1. The Court hereby GRANTS defendant's motion for leave to file a reply brief. The Court does not

## I. BACKGROUND

Plaintiffs Katherine Born and Rick Gillispie were formerly employed by defendant.[2] At all times relevant to this action, defendant maintained an employee dating policy which prohibited dating between supervisors/managers and their subordinates. On or about January 15, 1996, defendant terminated Ms. Born and Mr. Gillispie for allegedly violating the employee dating policy. Plaintiffs deny they were romantically involved, and filed the present action for wrongful discharge on March 14, 1996, in the Iowa District Court for Des Moines County. Defendant subsequently removed the action to this Court.

Plaintiffs argue their discharges are actionable under the public policy exception to the employment at-will doctrine. According to plaintiffs, defendant's conduct violated established Iowa policies of freedom of association and privacy as contained in the Iowa Constitution and case precedent. Defendant moved to dismiss the action, claiming that no facts exist which would entitle plaintiffs to relief under Iowa law.

## II. APPLICABLE LAW AND DISCUSSION

### A. Motion to Dismiss Standard

This Court cannot dismiss plaintiffs' petition pursuant to Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond doubt plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Smith v. St. Bernards Regional Medical Center*, 19 F.3d 1254, 1255 (8th Cir. 1994) (*quoting Conley v. Gibson*). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims ...'" *Rosenberg v. Crandell*, 56 F.3d at 37 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). In determining whether to grant a motion to dismiss, a court should examine the complaint in the light most favorable to the non-moving party, and should construe all allegations contained in the complaint as true. *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993). A court should grant a motion to dismiss "'as a practical matter ... only in the unusual case in which a plaintiff includes allegations that shows [sic] on the face of the complaint that there is some insuperable bar to relief.'" *Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir.1993) (*quoting Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir.1974)); *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir.1995).

### B. Plaintiffs' Claim for Wrongful Discharge

■ Under Iowa law, an at-will employee can be discharged at any time for any reason. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 219 (Iowa 1996); *Borschel v. City of Perry*, 512 N.W.2d 565, 566 (Iowa 1994). The Iowa Supreme Court has recognized two exceptions to this rule: (1) if the discharge violates a "well-recognized and defined public policy of the state"; and (2) if a contract has been created by an employee handbook or manual, and the contract is somehow breached. *Borschel v. City of Perry*, 512 N.W.2d at 566 (*quoting Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988)). The former of these two exceptions is at issue in the present case. It is important to note, however, that plaintiffs do not challenge the validity of defendant's no-dating rule. Rather, plaintiffs claim defendant's alleged mistake in assuming plaintiffs violated the rule—when in fact they did not—contravenes the public policies of freedom of association and privacy as grounded in the state and federal constitutions.

■ The Iowa Supreme Court has recognized that public policy "expressed in the constitution and the statutes of the state" may serve as a basis for finding an exception to the employment at-will doctrine. *Id.*, at 567 (*quoting* 82 Am.Jur.2d *Wrongful Discharge* § 19, at 692); *see also Thompto v.*

---

believe, however, that oral argument is necessary to assist the Court in ruling on defendant's motion.

**2.** The Court presumes plaintiffs were employed by defendant in Burlington, Iowa, although the petition does not expressly indicate the location of the store.

*Corborn's, Inc.*, 871 F.Supp. 1097, 1117 (N.D.Iowa 1994) (noting that the "State Constitution itself" may be a source of public policy). A violation of a federal law may also serve as the basis for a public policy exception. *Smuck v. National Management Corp.*, 540 N.W.2d 669, 673 (Iowa App.1995). The circumstances which might enable a wrongful discharge plaintiff to rely on a constitutional provision are not present in the case at bar, however.

■ The First Amendment prohibits the government from interfering with two types of freedom of association: the right "to enter into and maintain certain intimate human relationships;" and "the right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984). Similar rights are guaranteed by Article I, § 7 of the Iowa Constitution. ("Every person may speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech, or of the press.")

■ The First Amendment and Article I of the Iowa Constitution do not apply to alleged restrictions imposed by private parties, however. *See Id.* at 618, 104 S.Ct. at 3249. Plaintiffs attempt to overcome this obstacle by distinguishing their wrongful discharge claim from one based expressly on the violation of a constitutional right (such as an action under 42 U.S.C. § 1983). According to plaintiffs: "A wrongful discharge case requires the articulation or recognition of a public policy but does not require the same proof elements as if the Plaintiffs had brought suit alleging a violation of their constitutional rights." Plaintiffs' Resistance, at 6. Regardless of whether the elements of the causes of action differ, however, plaintiffs must nevertheless allege a violation of a "well-recognized public policy." In this case, the public policy at issue prohibits *governmental* restrictions on free speech and association. Plaintiffs have failed to cite to any statute, constitutional provision or case precedent which would amount to a "well-recognized public policy" against *private* limitations on free speech or association.

## C. Privacy Interest

■ Plaintiffs also argue that defendant's conduct violated a "well-recognized policy" against invasions of privacy. Again, the state and federal constitutional provisions which expressly protect an individual's privacy interests apply to state action only. *State v. Hartog*, 440 N.W.2d 852, 854 (Iowa 1989) ("The due process clauses of the fourteenth amendment and article I, section 9 of the Iowa Constitution are limited to state action".)

Plaintiffs argue in their resistance that a public policy exception could also be based on the common law tort of invasion of privacy. Plaintiffs cite to *Thompto v. Corborn's, Inc.*, for the premise that "well-recognized public policy" need not be derived from a statute. *Thompto v. Corborn's, Inc.*, 871 F.Supp. at 1116–1117. In determining whether, under Iowa law, an employee's discharge for threatening to consult a lawyer warranted a public policy exception to the employment at-will doctrine, the *Thompto* court reasoned:

First, because the Court finds fewer legislative statements of public policy pertinent to this issue, the Court must consider whether there are other proper sources of such a public policy. Although the Iowa Supreme Court has stated that causes of action for tortious discharge in violation of public policy rest on "certain legislatively declared goals," [*Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994)], and that "[s]uch policies may be expressed in the constitution and the statutes of the state," [*Borschel v. City of Perry*], 512 N.W.2d at 567 (*citing* 82 Am.Jur.2d, *Wrongful Discharge* § 19, at 692 (1992)), this court does not read these cases as suggesting that legislative pronouncements or the state constitution itself are the sole sources of public policy. The language of *Borschel*, "may be expressed," is permissive, not mandatory. A number of other jurisdictions have found public policy to be articulated in the judicial decisions of the state's courts. In the seminal case finding a pub-

lic policy exception to the employment at-will doctrine, the Illinois Supreme Court held that a clearly mandated public policy ... is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. (citation omitted). *Id.*

The above language from *Thompto* should not be viewed to equate every judicially recognized tort with a violation of public policy, however. Although *Thompto suggests* that judicial precedent could serve as a basis for a public policy exception, the *Thompto* court in fact relies heavily on the Iowa Code of Professional Responsibility, provisions of the *Iowa Code* pertaining to attorney licensure, and provisions of the *Iowa Code* which prohibit forms of retaliation "against an individual for taking actions to protect the individual's own or the public's interests." *Id.* at 1119–1121.

Furthermore, prior to *Thompto*, Iowa law was interpreted to allow a public policy exception to the employment at-will doctrine only when a state statute, or policy clearly articulated by state statute, had been violated. *See Lara v. Thomas,* 512 N.W.2d 777, 780 (Iowa 1994) (retaliatory discharge for filing worker's compensation claim held to violate public policy); *Wilcox v. Hy–Vee Food Stores, Inc.,* 458 N.W.2d 870, 872 (Iowa App.1990) (violation of statute prohibiting employer from requiring employee to take polygraph examination was violation of public policy); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 353 (Iowa 1989) (plaintiff discharged after threatening to file worker's compensation claim); *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560 (Iowa 1988) (discharge in retaliation for filing worker's compensation claim). Several attempts to create new public policy exceptions not expressly identified by the legislature have been rejected. This is true even if a statutory basis was identified, if the statute in question was intended to serve a different purpose. For example, in *French v. Foods, Inc.,* 495 N.W.2d 768, 769 (Iowa 1993), a grocery store employee sued the employer for wrongful discharge after the employee was terminated for eating store food he had not purchased. The employee argued his written "confession" had been coerced. He also argued that his termination was contrary to the statutory presumption of innocence, the alleged Iowa policies against suborning perjury, and making a false charge of dishonesty. *Id.* at 771–72. The Court rejected the plaintiff's argument, refusing to extend criminal law into the employment setting.

Similarly, in *Borschel v. City of Perry,* a police officer sued the City of Perry, Iowa, claiming his termination violated the due process clauses of the state and federal constitution, as well as the statutory presumption of innocence. *Borschel v. City of Perry,* 512 N.W.2d at 567. The police officer had been fired by the City after being charged with child molestation, but before the officer was actually convicted of the crime. *Id.* at 566–67. The Iowa Supreme Court rejected Borschel's claim that the "constitutional protection of due process coupled with the statutory presumption of innocence express[ed] a clear public policy." *Id.* at 568. Even though the presumption of innocence is codified in the Iowa Criminal Code, the court found it had not been intended for use in an employment context. *Id.*

In *Smuck,* decided in 1995, the Iowa Court of Appeals determined that violation of a *federal* statute could serve as a basis for a "well-recognized public policy exception." *Smuck v. National Management Corp.,* 540 N.W.2d at 673. Before reaching this holding, however, the court summarized the instances in which a public policy exception had been recognized by the Iowa courts. As outlined above by this Court, each case involved a violation of Iowa statute, or retaliation for exercising a right conferred by statute. *Id.* This Court therefore declines to recognize a public policy exception to the employment at-will doctrine based on the common law tort of invasion of privacy by a private person.

As noted by defendant, plaintiffs' cause of action is more appropriately characterized as "negligent discharge," or "breach of an employer's implied duty of good faith and fair dealing." Unfortunately for plaintiffs, the Iowa Supreme Court has expressly rejected both of these causes of action.

In a case decided in April of this year, a meat packing employee sued his employer

after being terminated for possessing a "look-alike drug," in violation of company policy. *Huegerich v. IBP, Inc.,* 547 N.W.2d at 216. The plaintiff claimed the drug in fact was a prescription medication for asthma, which belonged to his girlfriend.

As in the present case, the plaintiff in *Huegerich* did not challenge the propriety of the IBP policy against look-alike drugs. Rather, he claimed IBP employees committed outrageous conduct in administering the policy, and were negligent in failing to provide adequate training regarding the policy. It is not clear from the opinion whether Huegerich's counsel attempted to invoke a public policy exception to the employment at-will doctrine.

In reversing the lower court, the Iowa Supreme Court declined to recognize causes of action either for breach of an implied covenant of good faith and fair dealing in the employment context, or negligent discharge. *Id.* at 220. To hold otherwise, the court explained, would "alter the long recognized doctrine allowing discharge for any reason or no reason at all." *Id.*

## III. CONCLUSION

Based on the foregoing, defendant's motion to dismiss is GRANTED.

IT IS SO ORDERED.