# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1135
No. 01-1392

_____

|  |  |  |
|---|---|---|
| Teresa L. Mercer, | * | |
| | * | |
| Plaintiff - Appellant/ | * | |
| Cross Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| City of Cedar Rapids; William Byrne, | * | |
| | * | |
| Defendants - Appellees/ | * | |
| Cross Appellants. | * | |

_____

Submitted: May 15, 2002

Filed: October 15, 2002 (Corrected: October 17, 2002)
_____

Before BOWMAN, LOKEN, and BYE, Circuit Judges.
_____

LOKEN, Circuit Judge.

Following her termination as a Cedar Rapids probationary police officer, Teresa Mercer filed this action against the City of Cedar Rapids and its former police chief, William Byrne. We will collectively refer to these defendants as the "City." Mercer asserted equal protection and due process claims under 42 U.S.C. § 1983, sex discrimination claims under 42 U.S.C. § 2000e-2 and Iowa Code § 216 *et seq.*, and wrongful discharge and slander claims under state law. The district court granted

summary judgment dismissing the § 1983, sex discrimination, and wrongful discharge claims. Mercer v. City of Cedar Rapids, 104 F. Supp. 2d 1130 (N.D. Iowa 2000). Mercer appeals, and we affirm those rulings. After a trial, the jury awarded Mercer $48,000 in compensatory damages on her slander claim, and the district court denied the City's post-verdict motion for judgment as a matter of law. Mercer v. City of Cedar Rapids, 129 F. Supp. 2d 1226 (N.D. Iowa 2001). The City cross-appeals that ruling. Concluding that Mercer presented constitutionally insufficient evidence of actual malice, we reverse the judgment in her favor on the slander claim.

## I. Mercer's Appeal.

We review the district court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party. "Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 971 (8th Cir. 1994) (quotation omitted). When the grant of summary judgment is followed by the trial of a different claim, evidence adduced at trial may not be used to bolster the position of the party who appeals the summary judgment ruling. See U.S. East Telecomms., Inc. v. US West Comms. Servs., Inc., 38 F.3d 1289, 1301 (2d Cir. 1994), followed in Barry v. Barry, 78 F.3d 375, 379 (8th Cir. 1996).

Mercer was hired as a probationary police officer on March 17, 1997. That fall, she was twice seen socializing at a local tavern with Captain Phillip Peters, an officer who had been one of her instructors at the police academy. Chief Byrne interviewed Mercer, who admitted she was having marital difficulties. In November, Captain Peters reported that his tires had been slashed in the City's parking lot. Peters suspected Shawn Mercer, Mercer's husband and a Cedar Rapids Reserve Police Officer. In December, Mercer reported to suburban police that her residence had been vandalized. Shawn Mercer admitted doing the damage. In January 1998,

Shawn forcibly entered Mercer's residence when Mercer, Peters, and Mercer's infant daughter were present. After a confrontation, Mercer physically removed Shawn from the premises. She did not notify the local police because she wanted to avoid an Internal Affairs investigation.

At some point, Chief Byrne requested an Internal Affairs investigation. Mercer admitted to the investigators that she was romantically involved with Captain Peters. Though Internal Affairs instructed her not to discuss the investigation with anyone except legal counsel, Mercer later accompanied Peters when he complained to the Public Safety Commissioner about Chief Byrne's handling of the investigation. Eventually, Byrne referred the matter to a Functional Management Team comprised of three Assistant Police Chiefs. After meeting with Shawn and Teresa Mercer, all three recommended Shawn's termination, and two recommended that Mercer be terminated. On March 10, Chief Byrne conducted an informal hearing at which Mercer appeared with counsel and defended her position. She was terminated on March 13, four days before the end of her one-year probationary period. Shawn Mercer was terminated as a Reserve Officer on March 12.

## A. Equal Protection and Sex Discrimination Claims.

On appeal, Mercer challenges the dismissal of her § 1983 equal protection claim and her disparate treatment sex discrimination claims on a single ground -- that she was treated differently than a similarly situated male because Captain Peters received no discipline for engaging in the same behavior that resulted in her termination.[1] Mercer argues that a rational jury could find that the City's sole reason

---

[1] The assertion that Captain Peters was not punished is highly suspect, but we will assume it is true for summary judgment purposes. Shortly after the confrontation at Mercer's residence, Captain Peters was reassigned to a position usually held by a lieutenant. Though he retained rank and pay, Peters considered this punishment and appealed the reassignment to the City's Civil Service Commission.

for termination was her affair with Captain Peters, and that the decision to punish her but not Captain Peters violated her constitutional right to equal protection of the law and was a pretext for unlawful sex discrimination.

This argument cannot overcome the established law of this circuit that "troopers beyond the probationary period are not similarly situated to a probationary trooper," and therefore treating a non-probationary trooper more favorably than a probationary trooper is not probative evidence of pretext. Bogren v. Minnesota, 236 F.3d 399, 405, 408 (8th Cir. 2000), cert. denied, 122 S. Ct. 44 (2001). Mercer argues that this principle should not apply because she was terminated only four days before the end of her probationary period. But this rejoinder is wide of the mark. Regarding her equal protection claim, when a § 1983 plaintiff compares government employees who are not similarly situated, and the dissimilarities do not result from suspect classifications, "any different treatment is justified if it is rationally related to a legitimate governmental interest." Post v. Harper, 980 F.2d 491, 495 (8th Cir. 1992). Here, distinguishing between permanent and probationary employees on issues such as tenure and discipline serves a legitimate government interest, even if it results in arguably unfair disparate treatment in a particular case. Thus, the district court properly granted summary judgment dismissing Mercer's equal protection claim.

Regarding her sex discrimination claims, Mercer argues that the City did not come forward with "a sufficient nondiscriminatory reason" for her firing, the second stage of the familiar framework for analyzing Title VII claims adopted in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1972). We disagree. Although we accept for summary judgment purposes the truth of Mercer's contention that she was terminated solely because of a workplace romance, the City submitted evidence of additional reasons for the termination -- that Mercer's conduct during the Internal Affairs investigations and at her residence in January 1998 violated Police Department general orders and rules and regulations regarding Conduct Unbecoming an Officer, Insubordination, Obedience to Laws and Regulations, and Compromising

an Investigation. This showing easily satisfied the City's burden to articulate a nondiscriminatory reason for its action, a burden which "is not onerous." Floyd v. State of Mo. Dep't of Soc. Servs., 188 F.3d 932, 936 (8th Cir. 1999).

Moving to the third stage of the McDonnell Douglas analysis, Mercer argues that Chief Byrne was guilty of sex discrimination because he "disapproved of a woman's involvement in extramarital sex, but did not disapprove of the man's involvement in it with her, even when they were co-employees." It may well be that an employer who always fires the woman when two employees engage in an office romance would be guilty of gender discrimination. But Mercer presented no evidence of such a pattern or policy in the City's Police Department, and no other evidence that Chief Byrne intentionally discriminated against female officers. Instead, Mercer's entire discrimination case was based on the fact that Chief Byrne fired her and did not punish Captain Peters. In that respect, the two were not similarly situated because Mercer was a probationary employee whereas Captain Peters had the Civil Service rights of a permanent employee. In these circumstances, the district court properly granted summary judgment dismissing Mercer's sex discrimination claims.[2]

## B. The Procedural Due Process Claim.

The Due Process Clause protects a state or local government employee's liberty and property interests. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-72 (1972). In this case, Mercer alleges that Chief Byrne's comments to the press after her termination infringed a protected liberty interest. An employee's liberty interest is implicated when the employer accuses the employee of "dishonesty, immorality, criminality, racism, and the like," because it is "difficult or impossible for the employee to escape the stigma of those charges." Winegar v. Des Moines

---

[2]"The [Iowa Civil Rights Act] is interpreted to mirror federal law . . . . Thus, our analysis of [plaintiff's Title VII] claim applies equally to [her] ICRA claim." Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 n.2 (8th Cir. 2000).

Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir.), cert. denied, 513 U.S. 964 (1994). On the other hand, no liberty interest of constitutional significance is implicated when "the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." Buchholz v. Aldaya, 210 F.3d 862, 866 (8th Cir. 2000) (quotation omitted); see Green v. St. Louis Hous. Auth., 911 F.2d 65, 69 (8th Cir. 1990) ("Falsely charging an employee with unsatisfactory job performance when terminating him does not infringe his liberty interest.").

In this case, Byrne told a reporter that Mercer did not meet Police Department standards. Mercer argues these comments seriously damaged her reputation and "deprived her of her liberty interest in pursuing a career in law enforcement." Even construing the Chief's comments in the light most favorable to Mercer, the comments did not infringe a constitutionally recognized liberty interest. Byrne restricted his comments to Mercer's ability to perform her job and the impact of her actions on the workplace. Such comments cannot be construed to suggest stigmatizing traits such as dishonesty or racism. Thus, we need not consider whether Chief Byrne's post-termination comments were the sort of random and unpredictable deprivation for which a post-deprivation tort action for slander satisfies the requirements of the Due Process Clause. See Zinermon v. Burch, 494 U.S. 113, 131-32 (1990).

## C. The State Law Wrongful Discharge Claim.

Under Iowa law, an employee has a cause of action for wrongful discharge if she engaged in conduct protected by a clear public policy, she was terminated on account of that protected conduct, the dismissal jeopardized the public policy, and the employer had no overriding business justification for the dismissal. The existence of the requisite public policy and whether that policy was undermined by the discharge are questions of law. To ensure that this public policy exception does not swallow up the at-will employment doctrine, the Supreme Court of Iowa has been "careful to

limit the tort action for wrongful discharge to cases involving only a well-recognized and clear public policy." Fitzgerald v. Salsbury Chem., Inc., 613 N.W.2d 275, 282 & n.2 (Iowa 2000).

Mercer argues that terminating her for her affair with Captain Peters violates the Iowa public policy favoring the right of privacy. We agree with the district court that no well-recognized and clear Iowa public policy protects an at-will employee's privacy interest in a romantic relationship with a co-worker, especially when the employer concludes that the relationship has adversely affected the workplace. We have no doubt that an extra-marital affair between two co-workers, one of whom is married to a third co-worker, can damage the morale, discipline, and reputation of a work force, particularly when the employer is a paramilitary organization such as a police department. Cf. Tindle v. Caudell, 56 F.3d 966, 973 (8th Cir. 1995). Moreover, terminations for less threatening personal relationships have been held not to violate public policy. For example, in Born v. Blockbuster Videos, Inc., 941 F. Supp. 868, 869-70 (S.D. Iowa 1996), the court surveyed the relevant Iowa cases and found no clear public policy adversely affected by a discharge for violating the employer's employee dating policy. Similarly, in Sioux City Police Officers' Ass'n v. Sioux City, 495 N.W.2d 687, 695-96 (Iowa 1993), the court held that a public employer may adopt and enforce anti-nepotism policies preventing married or related persons from holding certain positions.

Mercer further argues that terminating her for participating in a conversation with the Public Safety Commissioner violated Iowa public policy. But Mercer complained to the Commissioner about the way she and Captain Peters were being treated by Chief Byrne. This was not the sort of comment on a matter of public concern that would outweigh the City's interest in enforcing its order that she maintain the confidentiality of the Internal Affairs investigation. Cf. Bartlett v. Fisher, 972 F.2d 911, 916 (8th Cir.1992). Therefore, no well-recognized and clear public policy barred the City from terminating Mercer for disobeying that order.

-7-

## II. The City's Cross Appeal.

On March 5, 1998, following the Internal Affairs investigation, Chief Byrne sent Mercer a memorandum scheduling a hearing on charges that Mercer had (i) provided false, misleading, evasive, or untruthful answers about her relationship with Captain Peters to the Internal Affairs investigators, (ii) disobeyed a direct order by discussing the investigation with the Commissioner of Public Safety, and (iii) violated Iowa law regarding domestic abuse and Police Department regulations during the January confrontation at her residence. The memorandum listed the Police Department general orders and rules and regulations that each action violated, and it advised Mercer "that disciplinary action, including release from probationary employment, may be taken as a result of these matters." On March 13, following the informal hearing, Chief Byrne sent Mercer a letter stating that she was "released from probation effective immediately" because she did "not meet the standards required of a police officer on the Cedar Rapids Police Department."

Also on March 13, a reporter from the Cedar Rapids Gazette -- who had covered Captain Peters's earlier demotion -- heard that Mercer had been terminated and called Chief Byrne to inquire. Chief Byrne confirmed that Mercer had been terminated but refused to state the reasons for that action. The reporter testified at trial that he then asked Byrne questions about the "generalities" of the situation "to try to get some insight into the specific case." Byrne's response resulted in a story in the March 14 Gazette under the headline, "Officer loses job; had relationship with co-worker." The story began with the following:

> Veteran Cedar Rapids police Capt. Phil Peters got a lateral reassignment in January from the command job he loved.

> On Friday, the probationary female officer with whom he had an off-duty relationship that attracted the police chief's concern lost her job.

Police Chief Bud Byrne last night downplayed officer Theresa Mercer's dismissal, saying it is not uncommon for a member of the probationary class to lose the job in the year before a permanent assignment begins.

The probationary year, which for Mercer was to have ended in a few days, gives the department and the officer a chance to see if police work is right for the officer, Byrne said.

"And so <u>it's not an unusual thing to find people who just don't meet up</u>," Byrne said.

(Emphasis added.) At trial, neither Byrne nor the reporter denied the accuracy of the quoted comment.

At trial, Mercer argued, and the jury found, that Byrne's statement about "people who just don't meet up" was, as to Mercer, defamatory (but not slanderous per se), false, and made with actual malice. The jury awarded her $48,000 in compensatory damages, and the district court denied the City's motion for judgment as a matter of law on this slander claim. The City appeals the jury verdict and the denial of its motion for judgment as a matter of law. The City also urges us to review the district court's pretrial order denying the City's motion for summary judgment on this claim. However, "[a] ruling by a district court denying summary judgment is interlocutory in nature and not appealable after a full trial on the merits." Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 988 n.2 (8th Cir. 1999).

The City first argues that the comment, "it's not an unusual thing to find people who just don't meet up," was not defamatory because it was generic, not targeted at Teresa Mercer. However, we agree with the district court that this was a jury issue because "in the context of the complete newspaper story, there are reasonable inferences that Chief Byrne's comments specifically related to Mercer" and adversely affected her professional reputation. 104 F. Supp. 2d at 1172. We also agree with the

-9-

district court that police officer Mercer was a "public figure," which means the First Amendment limits the City's slander liability to comments made with actual malice. The City is also entitled to a qualified privilege defense under state law for Chief Byrne's public comments about a public employee's termination. See 104 F. Supp. 2d at 1169, 1171. Thus, the remaining issues are whether Byrne's defamatory comment was false, and whether he made it with actual malice as that term is defined in First Amendment defamation cases and in the Iowa law of qualified privilege.

**Falsity.** The district court treated the truth of Chief Byrne's defamatory comment as an affirmative defense the City must prove. See 129 F. Supp. 2d at 1237-38. That was error. The jury found that the comment was not slanderous per se. Therefore, under Iowa law malice, falsity, and damage "must be proved by plaintiff before recovery can be had." Vojak v. Jensen, 161 N.W. 2d 100, 104 (Iowa 1968); see Schlegel v. Ottumwa Courier, 585 N.W.2d 217, 222 (Iowa 1998).

Mercer's evidence of falsity consisted of documents and testimony establishing that she performed competently as a probationary police officer. But proof limited to her competence assumes that Chief Byrne's criticism -- that Mercer did not "meet up" -- was also limited to her competence, and did not address her overall performance as a probationary member of the Police Department. A broad interpretation of whether a probationer "met up" would surely include factors such as whether she was evasive to Internal Affairs investigators, whether she disobeyed a direct order not to discuss the investigation with anyone but her attorney, and whether she failed to report the January confrontation at her residence to the local police. It would also doubtless include whether her relationship with Captain Peters adversely affected the workplace, a comment Byrne made to the Gazette reporter that the jury expressly found to be truthful.

The district court denied the City judgment as a matter of law on this issue because of evidence "indicating that Mercer was, in fact, competent." 129 F. Supp.

2d at 1238. Limiting the inquiry in this fashion is suspect given the general rule that, "[i]f the accusation is general and implies the commission of unspecified misconduct of a particular type, the statement is true if the plaintiff committed any misconduct of that type." RESTATEMENT 2D TORTS § 581A, comment c. "A basic rule of defamation law is that courts must construe a statement in light of its context and surrounding circumstances." Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 396 (8th Cir. 1996). In this context, the most reasonable interpretation of failing to "meet up" is any misconduct that justifies an employer in discharging a probationary employee.

On the other hand, this is a jury issue, and at least one Iowa Supreme Court decision has suggested that summary judgment should be denied on this ground if the defamatory statement "could be construed" to convey a false impression. Behr v. Meredith Corp., 414 N.W.2d 339, 342 (Iowa 1987); accord Lundell Mfg. Co. v. Am. Broad. Cos., 98 F.3d 351, 359 (8th Cir. 1996), cert. denied, 520 U.S. 1186 (1997). Despite this deferential standard, we are inclined to think Mercer failed to prove the falsity of Chief Byrne's general comment that she failed to "meet up." But we need not decide the issue of falsity because we conclude that Chief Byrne did not speak with the actual malice the First Amendment requires, an issue on which our role as reviewing court is less deferential to the jury's verdict.

**Actual Malice.** In defamation cases, courts use a single term, actual malice, to define two distinct legal principles. Under state law, a plaintiff may prove the defendant's actual malice to defeat the common law qualified privilege defense. In Iowa, actual malice in this context has traditionally meant "ill will, hatred, the desire to do another harm, or wrongful motive." Marks v. Estate of Hartgerink, 528 N.W.2d 539, 546 (Iowa 1995). On the other hand, the First Amendment bars a public figure from recovering defamation damages unless she proves, by clear and convincing evidence, that the statement was made with actual malice, that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." In re IBP

Confidential Bus. Documents Litig., 797 F.2d 632, 643 (8th Cir. 1986), cert. denied, 479 U.S. 1088 (1987) (quotation omitted).  Recently, the Supreme Court of Iowa seemed to merge the two tests when it stated that actual malice defeating the qualified privilege defense "occurs when a statement is made with knowledge that it is false or with reckless disregard for its truth or falsity."  Taggart v. Drake Univ., 549 N.W.2d 796, 804 (Iowa 1996).

In this case, the district court treated actual malice as a question of fact for the jury.  That may well be a correct view of the issue under state law.  But it was an error of law as applied to the actual malice issue that arises because of Mercer's status as a public figure for First Amendment purposes:

> The [constitutional] question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law.  Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. [485], 510-11 [1984].  This rule is not simply premised on common-law tradition, but on the unique character of the interest protected by the actual malice standard. . . .  Most fundamentally, the rule is premised on the recognition that "[j]udges, as expositors of the Constitution," have a duty to "independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'"  Bose, supra, at 511.

Harte-Hanks Communs., Inc. v. Connaughton, 491 U.S. 657, 685-86 (1989); accord Milkovich v. Lorain Journal Co., 497 U.S. 1, 17 (1990).

The district court went on to conclude that there was sufficient evidence of actual malice because a reasonable jury could conclude that Chief Byrne acted out of anger.  129 F. Supp. 2d at 1234-36.  Anger may be relevant to whether Byrne acted with the ill will that defeats a claim of qualified privilege under state law.  But whether Byrne was angry at Teresa Mercer, or simply disappointed with her conduct,

has no bearing on the question whether he acted with actual malice in the constitutional sense -- knowledge that his defamatory statement was false, or reckless disregard for its lack of truth.

Independently reviewing the sufficiency of the evidence on this constitutional issue, we conclude that the ambiguous nature of Chief Byrne's defamatory statement is dispositive. Had Byrne told the reporter, "Teresa Mercer is an incompetent police officer," the contrary documentary evidence and testimony regarding her performance as a probationary officer would have been strong evidence of his reckless disregard for the truth. But Byrne did not say she was incompetent. He said (or at least implied) that Mercer did not "meet up." Actual malice is a subjective standard. If Byrne used the term "meet up" in the broad sense referred to in our discussion of falsity, then he was not speaking with reckless disregard of the truth because the lengthy Internal Affairs investigation and recent informal hearing persuaded him that Mercer had violated departmental general orders and rules and regulations.

At trial, Mercer presented evidence tending to show either that Byrne's standards were inappropriate, or that she had in fact met them. But she presented no evidence tending to show that Byrne did not sincerely believe she had failed to "meet up." And the objective evidence strongly suggested that his public comment used the term "meet up" in the broad sense and therefore was not knowingly false or made with reckless disregard of the truth. The term "meet up" echoed Byrne's discharge letter, written earlier that day, which stated that Mercer did not "meet the standards required" of a police officer. The discharge letter followed an informal hearing on the three charges listed in Byrne's March 5 memorandum to Mercer. And those written charges provided specific evidence of why Byrne did not think Mercer had met *all* the standards required to successfully complete her probationary period.

In these circumstances, Mercer failed to prove actual malice, and the district court erred in denying the City's motion for judgment as a matter of law. Absent

-13-

actual malice, the issue of the appropriate standards for evaluating probationary Cedar Rapids police officers was a legitimate matter of public debate that must be unrestrained by defamation liability. The First Amendment's actual malice culpability requirement "ensure[s] that debate on public issues remains uninhibited, robust, and wide-open." Milkovich, 497 U.S. at 20 (quotation omitted).

The judgment of the district court is reversed, and the case is remanded with directions to dismiss the complaint.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.