# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2841

_____

| | | |
|---|---|---|
| Richard P. Landers, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| National Railroad Passenger | * | |
| Corporation, doing business as Amtrak, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: May 13, 2003

Filed: September 30, 2003

_____

Before LOKEN, Chief Judge, BRIGHT and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

After rating the performance of its managers, Amtrak terminated the lowest-rated ten percent, including Richard P. Landers, a Service Manager for the Empire Builder line. Landers commenced this lawsuit in Minnesota state court, asserting state law claims for defamation, breach of a term of employment contained in a superseded Amtrak employee policy, and disability discrimination. Amtrak removed the diversity case to federal court. Prior to trial, the district court limited Landers's defamation claim and granted summary judgment dismissing his breach of contract and disability discrimination claims. Following trial of the defamation claim, the jury

returned a verdict for Amtrak, finding false statements but no actual malice. Landers appeals, challenging the court's pretrial rulings and its actual malice jury instruction. Concluding the district court[1] committed no error of Minnesota law, we affirm.

## I. Defamation Issues.

On appeal, Landers raises two issues relating to the last claim pleaded in his multi-count complaint, defamation. This claim arises out of the performance review that implemented Amtrak's decision to terminate ten percent of its managers.

To arrive at an overall numerical performance rating, Amtrak gave each manager a rating from "1" to "7" in seven job performance categories. Product Line Director Gary Erford, Landers's immediate supervisor, initially recommended numerical ratings for Landers and four other managers under Erford's supervision. Erford recommended that Landers receive four 7's and three 3's. Erford's ratings were subject to revision by a secondary reviewer, whose task was to ensure consistent ratings across the entire business group. Joy Smith, General Manager of Amtrak's Western Business Group, performed the secondary reviews. She lowered Erford's recommended ratings for all five managers. For Landers, Smith reduced the final ratings to five 3's and two 2's, rating Landers at level "2" in the categories of safety and financial resources. Smith's final ratings put Landers in the bottom ten percent of all managers, resulting in his termination.

Landers alleges that performance ratings of "2" and "3" were false and defamatory. Amtrak's internal Job Performance Form defined level "2" as "Rarely met expectations" and level "3" as "Met expectations; partially achieved goals." The district court ruled that a rating of "3" could not reasonably be construed as

---

[1] The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota.

-2-

defamatory. Accordingly, the court instructed the jury that "the only two statements you may find were defamatory were the ratings Mr. Landers received in . . . safety and financial resources." The jury found that those ratings were false and defamatory but returned a verdict for Amtrak because Landers failed to prove actual malice.

## A.

Landers first argues that the district court erred in granting partial summary judgment dismissing his claim that the "3" ratings were defamatory. This contention reflects a misunderstanding of Minnesota defamation law. The district court did not grant summary judgment on a fact issue. Rather, the court decided a threshold issue of law. Under Minnesota law, defamatory statements include those that tend to injure the plaintiff's reputation. In deciding whether a statement was defamatory, "[w]ords may be divided into those that cannot possibly have a defamatory meaning; those that are reasonably susceptible to a defamatory meaning as well as an innocent one; and those that are clearly defamatory on their face." Church of Scientology of Minn. v. Minn. State Med. Ass'n Found., 264 N.W.2d 152, 155 (Minn. 1978). While the question whether a statement may reasonably be construed as defamatory is fact intensive, the Supreme Court of Minnesota has held that the analysis begins with an issue of law for the trial judge:

> The question whether a claimed defamatory innuendo is reasonably conveyed by the language used is for the court to determine. If the words are capable of the defamatory meaning, it is for the jury to decide whether they were in fact so understood.

Utecht v. Shopko Dep't Store, 324 N.W.2d 652, 653-54 (Minn. 1982) (citations omitted), followed in Kellar v. VonHoltum, 568 N.W.2d 186, 191 (Minn. App. 1997).

In this case, the district court determined as a matter of law that giving Landers a performance rating of "3" may not reasonably be construed as conveying a defamatory meaning. After careful de novo review of the trial record, we agree. Those who understood the Amtrak performance review process knew that a "3" meant Landers "met [employment] expectations [and] partially achieved [employment] goals." Declaring that an employee has performed satisfactorily cannot harm his reputation and therefore is not defamatory. As the district court recognized, impact on reputation is the relevant defamation inquiry, not whether Landers's satisfactory job performance ratings resulted in his termination because other employees were rated more highly. The tort of defamation is distinct from the question whether Landers was wrongfully discharged. The district court properly declined his invitation to collapse these two distinct inquiries.

## B.

Landers next argues that the district court erred in instructing the jury that Landers must prove actual malice. Under Minnesota law, an employer has a qualified privilege to make a defamatory statement "on a proper occasion, with a proper motive, and based on reasonable or probable cause." Scott Fetzer Co. v. Williamson, 101 F.3d 549, 555 (8th Cir. 1996); see Hebner v. Great N. Ry., 80 N.W. 1128, 1129 (Minn. 1899). The existence of a qualified privilege is a question of law for the court. Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 890 (Minn. 1986). However, if the facts are disputed, the issue of whether the declarant had reasonable or probable cause to make the defamatory statement may be submitted to the jury, in which case "[t]he court then factors that factual finding into its legal determination of whether an employer enjoys a qualified privilege." Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 380 n.4 (Minn. 1990). If the court determines the employer is entitled to a qualified privilege, then the defamation plaintiff must prove the employer abused its privilege by acting with actual malice. Lewis, 389 N.W.2d at 890.

In this case, Landers does not challenge the district court's phrasing of the actual malice instruction.  Rather, he argues the instruction was improper because Smith's "2" ratings were not based upon reasonable or probable cause, and therefore Amtrak was not entitled to the qualified privilege defense.  This issue was not properly preserved at trial.  In responding to Amtrak's motion for judgment as a matter of law at the close of Landers's case, he admitted "that Joy Smith may have had a qualified privilege" but argued she acted with actual malice.  Then, at the instructions conference, Landers objected to the actual malice instruction only on the ground that "the defamatory statements were made to individuals who did not have a need to know what those ratings would be."  Because Landers did not argue to the district court that Smith's defamatory ratings were made without reasonable or probable cause, and did not request that the jury make a finding to that effect, we review the district court's resolution of this issue of law for plain error.  See Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1104 (8th Cir. 1996).

At trial, General Manager Smith described in detail the data she considered and the analysis she made before giving Landers "2" ratings in the safety and financial resources categories.  The district court did not commit plain error in concluding that Smith had reasonable or probable cause for these ratings, even if in hindsight they proved to be false.  Therefore, Amtrak was entitled to the qualified privilege defense, and the court properly gave an actual malice instruction.

## II.  The Breach of Contract Claim.

In Count I of his complaint, Landers alleged that Amtrak breached his employment contract by failing to follow the progressive discipline procedures prescribed in Amtrak's 1981 personnel policy.  The district court granted summary judgment dismissing this claim because the last pre-termination Amtrak policy expressly superseded all prior policies and included a disclaimer negating any binding

-5-

contractual effect.  We review the grant of summary judgment <u>de novo</u>.  <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002).

Under Minnesota law, a progressive discipline policy described in an employee handbook constitutes a binding term of employment if it is definite in form, communicated to the employee, and accepted with consideration given.  <u>See Feges v. Perkins Rests., Inc.</u>, 483 N.W.2d 701, 707 (Minn. 1992).  We have construed this doctrine as precluding an employee from claiming contract rights under a handbook or policy document that expressly disclaims the creation of a binding contract.  <u>Miller v. Citizens Sec. Group, Inc.</u>, 116 F.3d 343, 348-49 (8th Cir. 1997).  Thus, when an employee policy declares the employer's intent to revoke the prior policy and includes an express disclaimer, it precludes a breach of contract claim based upon the prior policy by an employee who received the new policy and accepted it by continuing his employment.  <u>See Brown v. Tonka Corp.</u>, 519 N.W.2d 474, 477 n.2 (Minn. App. 1994), construing <u>Feges</u>, 483 N.W.2d at 707, <u>Pine River State Bank v. Mettille</u>, 333 N.W.2d 622 (Minn. 1983), and <u>Lewis</u>, 389 N.W.2d at 883.

Amtrak distributed a new personnel policy two weeks before Landers was terminated.  Landers argues the district court erred in granting summary judgment because whether the new policy was communicated to him and whether there was adequate consideration for this change in policy are disputed fact issues for the jury. However, Landers testified at his deposition that he received the new policy before termination, understood that it superseded older policies, and continued to work for Amtrak.  Given these admissions, the district court properly granted summary judgment dismissing the breach of contract claim.

### III.  The Disability Discrimination Claim.

In Count II of his Complaint, Landers alleged that Amtrak discriminated against him on account of a disability, Bell's palsy.  Landers contracted Bell's palsy

in December 1996.  He suffered substantial facial paralysis and material impairment of several major life activities for approximately one year.  Nerve decompression surgery improved his condition, and by June 1998 Landers had regained 70 to 80 percent of his facial functioning.  Noting that Landers failed to present evidence showing material impairment of his major life activities at the time of his termination in March 2000, and that he was fully able to perform his job at Amtrak after the onset of Bell's palsy, the district court granted summary judgment dismissing this state law claim on the ground that Landers was not a "disabled person," that is, one who "has a physical, sensory, or mental impairment which materially limits one or more major life activities."  MINN. STAT. § 363.01, subd. 13(1).

On appeal, Landers argues that the district court erred in granting summary judgment on this ground because there was evidence showing that, more than four years after he contracted Bell's palsy, he still suffered from facial twitching, an inability to completely open his mouth, and a limited field of vision in his left eye.  We agree with the district court that this evidence failed to demonstrate that his impairments, however unpleasant, materially limit one or more major life activities.  Landers's condition did not interfere with eating or drinking (other than requiring smaller mouthfuls), and his work performance was unaffected, according to his own assessment.  In these circumstances, summary judgment dismissing this claim was proper.  Compare Sigurdson v. Carl Bolander & Sons, Co., 532 N.W.2d 225, 229 (Minn. 1995) (summary judgment affirmed because plaintiff failed to show that diabetes "materially limited his ability to obtain and retain employment"), with Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 544 (Minn. 2001) (summary judgment reversed because plaintiff presented evidence that "fibromyalgia materially limited her ability to work").

The judgment of the district court is affirmed.

_____